**Lloyd D. JOHNSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 47A01–0407–PC–304.**

Court of Appeals of Indiana.

Aug. 11, 2005.

Rehearing Denied Sept. 28, 2005.

Lloyd D. Johnson, Tell City, Appellant pro se.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy

Attorney General, Indianapolis, for Appellee.

**OPINION**

RILEY, Judge.

*STATEMENT OF THE CASE*

Appellant–Petitioner, Lloyd D. Johnson (Johnson), appeals the denial of his Petition for Post–Conviction Relief (PCR).

We affirm.

*ISSUES*

Johnson raises five issues on appeal, which we consolidate into four issues and restate as follows:

1. Whether the post-conviction judge properly presided over Johnson's post-conviction hearing;

2. Whether the post-conviction court erred when it denied Johnson's motion to subpoena certain witnesses;

3. Whether the post-conviction court properly denied admission of Johnson's alleged newly discovered evidence; and

4. Whether Johnson was denied effective assistance of trial, sentencing, and appellate counsel.

*FACTS AND PROCEDURAL HISTORY*

We adopt the statement of facts set forth in this Court's memorandum decision in *Johnson v. State,* No. 47A01–9911–CR–384, 737 N.E.2d 1241, slip. op. at pp. 2–3 (Ind.Ct.App. October 27, 2000), which read as follows:

> On August 1, 1997, Johnson and Scott Nicholson [Nicholson] agreed to make methcathinone. They agreed that Nicholson would pay for the methcathinone ingredients, that Johnson would show Nicholson how to manufacture it, and that they would each get half of the finished product. ·On that same day, Nicholson and Johnson went to five dif-

ferent stores to purchase the necessary ingredients.

> On August 2, 1997, Nicholson and Johnson gathered more ingredients and equipment and drove to Brian Fisher's [Fisher] house. Fisher agreed to help them make methcathinone in his backyard and to allow them to use his freezer in exchange for a share of the finished product. Subsequently, the three began manufacturing methcathinone pursuant to Johnson's directions. When Fisher left at approximately 4:30 p.m., Johnson [laid] down on a small trampoline next to the truck in which they had placed the equipment.

> Meanwhile, Officer David Walker [Officer Walker] of the Bedford Police Department received an anonymous phone call from someone who stated that people were manufacturing methcathinone in Fisher's backyard. Officer Walker and several other officers drove to Fisher's residence, arriving at the same time that Fisher returned home. After Fisher consented to a search of his property, the police went into his backyard and found Johnson lying on the trampoline.

> On August 5, 1997, the State filed an information charging Johnson with Count I, attempted dealing in a schedule I controlled substance, a Class B felony, Ind. Code §§ 35–41–5–1, 35–48–4–2; and Count II, conspiracy to commit dealing in a schedule I controlled substance, a Class B felony, I.C. § 35–41–5–2. On December 11, 1997, the State filed an additional information amending Count I to dealing in a schedule I controlled substance as a Class B felony, I.C. § 35–48–4–2. On April 14, 1999, following a jury trial, Johnson was found guilty on both counts. On October 9, 1999, the trial court sentenced Johnson to two consecutive terms of twenty years imprisonment.

Upon appeal, this Court held in an unpublished memorandum decision that Johnson's convictions violated Indiana's prohibition against double jeopardy and instructed the trial court to vacate Johnson's conspiracy conviction. On remand, the trial court vacated the conspiracy conviction, leaving Johnson with a single twenty-year sentence.

On January 13, 2001, Johnson filed a motion to compel production of documents from his former appellate counsel, which the trial court denied on January 18, 2001. In Johnson's appeal of that decision, Johnson failed to file an appendix, and we dismissed Johnson's appeal for failure to comply with Indiana Appellate Rule 49(A). *See Johnson v. State,* 756 N.E.2d 508 (Ind. Ct.App.2001), *trans. granted.* Our supreme court granted transfer and held that the better practice to follow in a criminal appeal where an appendix is not filed or where an appendix is missing documents required by rule is to order compliance with the rules within a reasonable time, such as thirty days. *Johnson v. State,* 756 N.E.2d 965, 967 (Ind.2001).

Upon remand of that appeal to this Court, we held that the trial court erred in denying Johnson's Motion to Compel Production of Documents from his former appellate counsel, and remanded the cause with instructions that the trial court grant Johnson's Motion to Compel any documents he might have been entitled to receive. *Johnson v. State,* 762 N.E.2d 222, 223 (Ind.Ct.App.2002), *reh'g denied.*

In the meantime, on June 28, 2001, Johnson filed a petition for post-conviction relief (Petition). At the same time, Johnson filed a motion for change of judge along with a supporting affidavit. On August 22, 2001, the post-conviction judge entered a summary denial of Johnson's Motion for Change of Judge and Petition.

Thereafter, Johnson appealed the post-conviction court's summary denial of his Motion for Change of Judge and Petition. On appeal, we held that the denial of Johnson's Motion for Change of Judge was not erroneous, and that there was no error in denying Johnson's claims for prosecutorial misconduct, newly discovered evidence, and his motions for change of venue and judge. *Johnson v. State,* No. 47A05–0110–PC–439, 783 N.E.2d 800, slip. op. at pp. 12–13 (Ind.Ct.App. January 13, 2003). However, we did hold that an evidentiary hearing was required to address Johnson's ineffective assistance of counsel claims. *See id.*

On October 9, 2003, Johnson filed an Amended Petition for Post–Conviction Relief. Thereafter, on February 10 and February 18, 2004, the post-conviction court held an evidentiary hearing on Johnson's ineffective assistance of counsel claims. On June 24, 2004, the post-conviction court issued its Findings of Fact and Conclusions of Law denying Johnson's Petition.

Johnson now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION
### I. *Post–Conviction Relief Standard of Review*

Under the rules of post-conviction relief, the petitioner must establish the grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1, § 5; *Sanders v. State,* 764 N.E.2d 705, 709 (Ind. Ct.App.2002), *trans. denied.* To succeed on appeal from the denial of relief, the post-conviction petitioner must show that the evidence is without conflict and leads unerringly and unmistakably to a conclusion opposite to the one reached by the post-conviction court. *Catt v. State,* 749 N.E.2d 633, 640 (Ind.Ct.App.2001), *trans. denied.* The post-conviction court is the sole judge of the weight of the evidence and the credibility of the witnesses.

*Woods v. State,* 701 N.E.2d 1208, 1210 (Ind.1998), *reh'g denied.*

Further, the post-conviction court in this case entered findings of fact and conclusions of law in accordance with Indiana Post–Conviction Rule 1, § 6. "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Little v. State,* 819 N.E.2d 496, 500 (Ind.Ct.App.2004) (quoting *Ben–Yisrayl v. State,* 729 N.E.2d 102, 106 (Ind. 2000), *reh'g denied* ), *trans. denied.* In this review, findings of fact are accepted unless clearly erroneous, but no deference is accorded conclusions of law. *Id.* Additionally, we remind Johnson that he is not entitled to a perfect trial, but is entitled to a fair trial, free of errors so egregious that they, in all probability, caused the conviction. *Averhart v. State,* 614 N.E.2d 924, 929 (Ind.1993).

## II. *Presiding Judge*

Johnson first contends that the post-conviction judge committed reversible error when he failed to follow the prescribed procedures for selection of a special judge.[1] In addition, Johnson claims that the Lawrence Circuit and Superior Courts were without jurisdiction to appoint a special judge because we had jurisdiction over his case.

The selection of a special judge in criminal cases is governed by Indiana Criminal Rule 13, which provides in pertinent part: "(A) Application of Rule. This rule shall apply to the reassignment of the case and the selection of special judges in felony and misdemeanor cases where a change of judge is granted pursuant to Ind.Crim. Rule 12(B) or an order of disqualification

or recusal is entered in the case." The procedure for selecting a special judge in counties with less than four judges is governed by Ind.Crim. Rule 13(C) which provides in pertinent part:

In counties where there are fewer than four (4) judges, the local rule required by Ind.Crim. Rule 2.2 shall include an alternative assignment list with judges of contiguous counties and senior judges assigned to the court for use in the event a change of judge is granted or a judge is disqualified or recuses.

Lawrence County Circuit and Superior Courts have three regular judges and therefore adopted a local rule for the selection of a special judge in criminal cases:

RULE 4: Change of Judge in Criminal Cases

In the event the regular Judge of the court is disqualified, the case shall be assigned as follows: From the Judge of the Circuit Court to the Judge of Superior Court, Division 1; from the Judge of Superior Court, Division 1 to the Judge of Superior Court, Division 2; from the Judge of Superior Court, Division 2 to the Judge of Circuit Court. In the event that all three regular Judges of the Lawrence Circuit and Superior Courts are disqualified, the case shall be assigned first to the judges of the Monroe Circuits, Division 1 through 6, then to the Judges of the Jackson Circuit and Superior Courts, then to the Judges of Washington Circuit and Superior Courts, then to the Judges of the Orange Circuit and Superior Courts, then to the Judge of the Martin Circuit Court, then to the Judges of the Greene Circuit Court and Superior Courts, all

---

**1.** Johnson maintains that Indiana Trial Rule 79.1 controls the procedures for the selection of a special judge. However, Indiana Trial Rule 79.1 does not apply to criminal cases. In post-conviction proceedings, a change of judge is governed by Ind.Crim. Rule 13. *See* Ind.Post–Conviction Rule 1, § 4(b). Therefore, we look to Rule 13 of the Indiana Rules of Criminal Procedure for the proper method in selecting a special judge.

on a rotating basis in the preceding order.

(Addendum to Appellee's Br.).

■ Based on Local Rule 4, Johnson now argues that it was error for Judge Michael Robbins (Judge Robbins) to be assigned this case. Specifically, Johnson maintains that because all three judges of the Lawrence Circuit and Superior Courts had been disqualified or recused, his case should have been assigned to the judges of the Monroe Circuit, not Judge Robbins. We disagree.

Our review of the record reveals that on August 5, 1997, this case was assigned to Judge Raymond Kern (Judge Kern), the presiding judge in Lawrence Superior Court No. 1. On April 4, 2002, Judge Kern disqualified himself and assigned this case to Judge William Sleva (Judge Sleva), presiding judge in Lawrence Superior Court No. 2. On May 28, 2002, Judge Sleva qualified as a special judge and assumed jurisdiction. Shortly thereafter, on July 19, 2002, Judge Sleva recused himself and assigned this case to Judge Richard McIntyre (Judge McIntyre), presiding judge in the Lawrence Circuit Court. On July 22, 2002, Judge McIntyre qualified as special judge and assumed jurisdiction of this case. Judge Pro–Tem of the Lawrence Circuit Court, Andrea McCord (Judge Pro–Tem McCord), presided over the case for Judge McIntyre. On August 28, 2003, Judge Pro–Tem McCord disqualified herself and assigned the case to Judge Michael Robbins (Judge Robbins), the newly-elected presiding judge of Lawrence Superior Court No. 1. Thereafter, Judge Robbins presided over Johnson's amended PCR petition on February 10 and February 18, 2004.

Thus, beginning on August 5, 1997, this case was assigned to each of the three regular judges in the Lawrence Circuit and Superior Courts because of disqualification or recusal. However, at some point between April 4, 2002, and August 28, 2003, Judge Robbins was appointed to replace Judge Kern as presiding judge of Lawrence Superior Court No. 1. Therefore, when Judge Pro–Tem McCord disqualified herself on August 28, 2003, Judge Robbins was a regular judge of the Lawrence Superior Court who had not yet been assigned the case. Based on the circumstances in this case, we do not construe Local Rule 4 to require assignment of a case to a judge in Monroe County if there is a regular judge available in Lawrence County who has not presided over the case. Accordingly, we find no error in the assignment of this case to Judge Robbins.

■ Next, Johnson contends that it was error for the trial court to assert its jurisdiction and assign his case to three different special judges while an appeal to this Court was pending. Specifically, Johnson argues that the trial court's assignment of his case to different judges intermeddled with his direct appeal of the trial court's denial of his Motion for Change of Judge. On the other hand, the State contends that the trial court had jurisdiction to appoint Judge Robbins because his appointment was made after we certified Johnson's appeal.

■■ As a general rule, once an appeal is perfected the trial court loses subject matter jurisdiction over the case. *See* Ind. Appellate Rule 3(A); see also *Bradley v. State*, 649 N.E.2d 100, 106 (Ind.1995), *reh'g denied*. A judgment made when the court lacks subject matter jurisdiction is void. *Bradley*, 649 N.E.2d at 106.

In the instant case, on September 13, 2001, Johnson filed a notice of appeal from the post-conviction court's denial of his Motion for Change of Judge and Petition. This Court acquired jurisdiction of Johnson's case on October 2, 2001, when the trial court clerk issued its Notice of Com-

pletion of Clerk's Record. *See* Ind. Appellate Rule 8. Thereafter, the trial court did not regain jurisdiction over Johnson's case until this Court's opinion was certified on May 20, 2003.[2] While we had jurisdiction over Johnson's appeal, from October 2, 2001 until May 20, 2003, the trial court changed the presiding judge in his case on three different occasions due to disqualification or recusal. However, Judge Robbins, who presided over Johnson's PCR hearings on February 10 and February 18, 2004, was not appointed as special judge until August 28, 2003, several months after our certified opinion. Therefore, we find that because Johnson's appeal was certified on May 20, 2003, the trial court regained jurisdiction on that date, and had authority to select Judge Robbins as special judge to hear Johnson's amended PCR petition.

### III. *Subpoena of Witnesses*[3]

■ Johnson next contends that the post-conviction court erred in denying his requests to subpoena several witnesses. Specifically, Johnson claims the testimony of Kris Metzler (Metzler), Jonelle Shiel (Shiel), Dr. A.P. Shadiwani (Dr. Shadiwani), Bill Harper (Harper), Richard Keith Cobb (Cobb), and two jurors was necessary to support his claims of ineffective assistance of counsel. In addition, Johnson asserts the post-conviction court failed to enter a finding on the record as to why it refused to issue the subpoenas.

The court has discretion to determine whether to grant or deny the petitioner's request for a subpoena. *Allen v. State,* 791 N.E.2d 748, 756 (Ind.Ct.App.2003), *trans. denied.* An abuse of discretion has occurred if the court's decision is against the logic and effect of the facts and circumstances before the court. *Id.*

■ At the outset, we note that Indiana Appellate Rule 46(A)(8)(a) requires that each of the appellant's arguments be supported by coherent reasoning with citations to the authorities, statutes, and the appendix or parts of the record on appeal relied on. *See Blanchard,* 802 N.E.2d at 28. Johnson's arguments that the post-conviction court erred in denying his subpoenas for Metzler, Harper, Cobb, and two jurors, fail to meet the requirements of this rule. In his brief, Johnson plainly asserts, without even citing to the record, that the testimony of these witnesses were necessary to have a fair post-conviction hearing. Accordingly, we find these arguments waived. *See id.*

■ Next, Johnson asserts that the post-conviction court erred in denying his request to subpoena Shiel because her testimony would have revealed that the State failed to prove every element of the offense. However, Johnson fails to address which element of the offense he relies on. Moreover, he does not even argue how this testimony would have supported his inef-

---

**2.** Appellant's Chronological Case Summary reflects that this Court's opinion in cause number 47A05–0110–PC–439 was certified on May 29, 2003. However, the Appellee asserts, and we confirm in our Electronic Case History, that this opinion was certified on May 20, 2003.

**3.** Included within this issue, Johnson argues that the post-conviction court erred when it refused his requests for the following: (1) that the State provide him with Nicholson's entire criminal history; (2) to be allowed to listen to

the audio recording of his jury trial; and (3) for the court reporter to transcribe Fisher's audio statement. However, Johnson does not support his arguments with citations to authorities, statutes, and the appendix or parts of the record on appeal relied on, as required by Indiana Appellate Rule 46(A)(8)(a). *See, e.g., Blanchard v. State,* 802 N.E.2d 14, 28 (Ind.Ct.App.2004). Therefore, we find these arguments waived. *See id.* Additionally, we note that Johnson failed to provide the applicable standard of review as required by Indiana Appellate Rule 46(A)(8)(b).

fective assistance of counsel claim. Accordingly, we also find this argument waived. *See id.*

■ Johnson also maintains that the post-conviction court erred in denying his request to subpoena Dr. Shadiwani. Johnson claims that Dr. Shadiwani's testimony would have revealed that Johnson's trial counsel was ineffective. Specifically, Johnson maintains that his trial counsel should have called Dr. Shadiwani as a witness because Dr. Shadiwani would have testified that Nicholson has a reputation for untruthfulness. Our review of the record reveals that the post-conviction court admitted into evidence a personal affidavit from Dr. Shadiwani which stated in pertinent part: "I could have testified concerning the reputation for truthfulness of [Nicholson], and of [Nicholson's] general moral character. I know him to be a liar because he kidnap[p]ed and robbed me, he lied about a gun, a police scanner, and other things." (Appellant's App. p. 390). We find that even if the post-conviction court wrongfully denied Johnson's subpoena of Dr. Shadiwani, such error was harmless because his proffered testimony would have been cumulative of other impeachment evidence that was admitted. *See Allen v. State*, 787 N.E.2d 473, 479 (Ind.Ct.App.2003), *trans. denied.*

Lastly, Johnson contends that the post-conviction court erred when it failed to state or record its reasons for denying Johnson's request for issuance of subpoenas. Indiana Post–Conviction Rule 1, § 9(b) provides in pertinent part:

> If the pro se petitioner requests issuance of subpoenas for witnesses at an evidentiary hearing, the petitioner shall specifically state by affidavit the reason the witness' testimony is required and the substance of the witness' expected testimony. If the court finds the witness' testimony would be relevant and probative, the court shall order that the subpoena be issued. If the court finds the proposed witness' testimony is not relevant and probative, it shall enter a finding on the record and refuse to issue the subpoena.

Our review of the record reveals that the post-conviction court entered in its Findings of Fact the reasons for denial of Johnson's request for issuance of subpoenas. Specifically, the post-conviction court stated:

> During [Johnson's] hearing for post-conviction relief, [Johnson] was not permitted to call several witnesses that were determined to be unnecessary to adjudicate the issue at hand and/or were cumulative. In making the determination of which witnesses to be permitted to testify at [Johnson's] hearing for post-conviction relief, the presiding judge inspected each affidavit offered by [Johnson]. If the affidavit, on its face, showed no relation to [Johnson's] specific appeal of ineffective assistance of counsel or was cumulative, the witness was not permitted to testify.

(Appellant's App. p. 254). Therefore, we find that the trial court did not abuse its discretion in denying Johnson's request for issuance of subpoenas. *See Allen*, 791 N.E.2d at 756.

### IV. *Newly Discovered Evidence*

Johnson claims there is evidence not previously presented that requires a new trial. Specifically, Johnson argues that an affidavit from Michael McVicker (McVicker) states that McVicker did not see Johnson at Fisher's house on the day that Johnson was arrested for the charges in this case. In addition, Johnson wishes to present an affidavit from Nicholson in which Nicholson claims that he lied about Johnson's involvement.

■ Our review of the record reveals that on October 4, 1999, McVicker pro-

duced an affidavit stating that he did not see Johnson at Fisher's house when the methcathinone was being produced. However, McVicker's affidavit was included in Johnson's original petition for post-conviction relief as newly discovered evidence, which the post-conviction court summarily denied on August 22, 2001, and we affirmed in part in *Johnson v. State,* No. 47A05–0110–PC–439, 783 N.E.2d 800 (Ind. Ct.App. January 13, 2003). Therefore, we bar this claim under the law of the case doctrine. *See In re Adoption of Baby W.,* 796 N.E.2d 364, 372 (Ind.Ct.App.2003), *reh'g denied, trans. denied* (where we recognized that the law of the case doctrine provides, as a general proposition, that an appellate court's determination of a legal issue binds both the trial court and the court on appeal in any subsequent appeal involving the same case and substantially the same facts).

 Johnson also argues that he should be granted a new trial because of newly discovered evidence regarding Nicholson's affidavit. In this case, Nicholson executed an affidavit on December 30, 2002, in which he claimed to have lied about Johnson's involvement in the production of the methcathinone. Following this Court's decision in *Johnson v. State,* No. 47A05–0110–PC–439, 783 N.E.2d 800 (Ind.Ct.App. January 13, 2003), Johnson filed an Amended Petition for Post–Conviction Relief on October 9, 2003. However, Johnson did not raise this newly discovered evidence claim regarding Nicholson's affidavit in his Amended Petition. Johnson raises this issue for the first time on appeal from his second post-conviction proceeding. It is well settled that "issues not raised in the petition for post-conviction

relief may not be raised for the first time on post-conviction appeal." *Allen v. State,* 749 N.E.2d 1158, 1171 (Ind.2001), *reh'g denied; see also* Ind.Post–Conviction Rule 1, § 8. Therefore, we find this argument waived. *See id.*

## V. *Ineffective Assistance of Counsel*

### A. *Standard of Review*

Johnson appears to argue that he was denied the effective assistance of trial, sentencing, and appellate counsel as guaranteed under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Indiana Constitution.[4] The standard by which we review claims of ineffective assistance of counsel is well established. In order to prevail on a claim of this nature, a defendant must satisfy a two-pronged test, showing that: (1) his counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Blanchard v. State,* 802 N.E.2d 14, 34 (Ind. Ct.App.2004) (citing *Strickland v. Washington,* 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *reh'g denied* ).

Counsel's performance is presumed effective, however, and a defendant must offer strong and convincing evidence to overcome this presumption. *Id.* Moreover, we do not need to determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052. To satisfy a showing of prejudice, Johnson must demonstrate that there

---

4. Johnson fails to mention that the right to effective assistance of counsel is guaranteed under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Indiana Constitution. Further, Johnson fails

to provide the applicable standard of review for these issues as required by Indiana Appellate Rule 46(A)(8)(b). Nevertheless, we will discuss these issues on their merits.

is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Blanchard*, 802 N.E.2d at 34. Furthermore, we "will not speculate as to what may or may not have been advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best." *Whitener v. State*, 696 N.E.2d 40, 42 (Ind. 1998).

### B. *Trial Counsel*

Johnson first argues that he received ineffective assistance of trial counsel. Specifically, Johnson urges us to find that his trial counsel was ineffective for the following: (1) agreeing to admit into evidence two letters written by Johnson; (2) failure to object to three of the State's proposed jury instructions; (3) failure to propose jury instructions; (4) failure to hold the State to its burden of proof; (5) ineffective cross examination of Shiel and Nicholson; (6) failure to call Dr. Shadiwani as a witness to impeach Nicholson; (7) failure to impeach Nicholson's testimony; (8) failure to call McVicker as a witness; (9) failure to support a motion to suppress Nicholson's testimony; (10) failure to object to the State's reference to the two letters during its closing argument; (11) testifying against Johnson in opening and closing arguments; and (12) failure to perfect a change of venue and change of judge. We will discuss each of these contentions in turn.

### 1. *Stipulation of Letters*

■ Johnson first asserts he received ineffective assistance because his trial counsel stipulated to the admission of two letters written by Johnson to his friend Randy Pemberton (Pemberton). Specifically, Johnson argues that his trial counsel erred in stipulating to the letters' admission because they were inadmissible hearsay, violated his right to confrontation, and contained improper bad act evidence.

Our review of the record reveals that on December 6, 1997, Johnson wrote a letter to Pemberton while Johnson was incarcerated in the Lawrence County Jail. The redacted portion of the letter, which Johnson's trial counsel stipulated to admit into evidence, reads as follows:

[Pemberton],

Hey there buddy. I'm writing you caused heard you talk to [Nicholson] during visits. Would you go see him as soon as you get this letter[,] hopefully "Tuesday[?]" Tell [Nicholson] we are taking depositions this Thursday 11th. All [Nicholson] needs to say is that he wasn't there cause he wasn't, and that he don't know why I gave that statement about the truck. Cool?

About the truck[,] Larry Halloway[']s name is on my list of the [State's] witnesses. Ask [Nicholson] what the [f* * * *] he gonna tell them about me. I didn't steal his truck. Never saw it until the police woke me from my [n]ap. I hope he says it was stolen Friday night Aug[ust] 1st though.

. . .

My attorney talked to [Nicholson's] lawyer and he said that he'd probably roll over on me too. I said [n]o he won[']t. That[']s what they need for a conviction[;] one of us to *snitch* cause it takes 3 witnesses to convict a person on information and [Fisher] and his ol' lady is going to say it[']s anybody[']s but theirs cause it was [their] place. Right? Anyhow tell him if we stick together we can beat these bitches.

. . .

Hey Byford, everything[']s coming together "Fast" now dog. If I don't see you soon it[']s been nice knowing you. I'm gonna beat it hopefully.

. . .

So, [i]t's plain to see I don[']t need anyone else snitchin' on me.

Tell [Nicholson] to hang tough cause [the State] will be makin[g] him some good deals this week. But we stick together and we'll beat [them] anyhow. They need one of us to roll over *"period"* and since I'm going to trial in a week they need him to.

. . . then [d]epositions are sometime Thursday.

After Thursday I'll know if I've got [them] beat or not.

Randy, you and everybody you know are welcome[ ] to stop by the court here next to the jail on the 15 + 16 to listen to some bitches snitch on me. Without [Nicholson] or Larry they've not got a chance.

Tell [Nicholson] it was me and him together not one of us and the [State]. Right? Don[']t switch sides on me now. If he hangs tight we'll both beat them. Seriously too.

Thanks [Pemberton], Later [Johnson]

(Appellant's App. pp. 365–66).

Thereafter, on January 12, 1998, Nicholson wrote Pemberton another letter while incarcerated at the Lawrence County Jail. The redacted portion of this letter, which Johnson's trial counsel stipulated to admit into evidence, states as follows:

[Pemberton],

Hey there guy. I hope you don[']t care for me writing you at your mothers but I wanted to show you the cops deposition [a page] and see if you'd show it to [Nicholson] when you visit him. He thinks that statement about the truck I gave is what got him in here. That[']s [bullshit]! I asked my lawyer and he said it only takes one person to get a probable cause affidavit for an arrest. He had Fisher, Fisher[']s wife and the [neighbors] plus the kids. They would've picked him up regardless of whether or not they could prove anything just hoping he'd tell—like he did.

. . .

Well I'm gonna go now. Will you show him that deposition page of Dave Walker[']s for me? I think he'd want to know why they really locked him up. His lawyer knew I'd be [t]he key to his plea [bargain] that[']s why he told him to stay away from me and that the statement about the truck is what caused him to get arrested.

His plea [bargain] states right in it to testify truthfully against me and I saw his John Henry the day I watched him turn states on me.

I couldn't believe it! Still don't want to[ ]. That[']s just his first page it got *better*! Thanks Later [Johnson].

(Appellant's App. p. 367). Johnson's trial counsel testified that he stipulated to the admission of the two redacted letters because he did not want to hide potentially admissible evidence from the jury. Specifically, trial counsel's testimony revealed:

I enjoy dealing with the jury and I think if a jury thinks I'm trying to cover something up, I think it hurts our case instead of [helping] it. So because I was convinced that those letters were going to come in as evidence, one way or another, I chose to stipulate them rather than, than to object to them at the time they were introduced.

(PCR Transcript p. 188).

First, Johnson argues that his trial counsel was ineffective for stipulating to the admission of the letters because they are inadmissible hearsay. The Indiana Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *See* Ind.Evidence Rule 801(c). Hearsay is generally

not admissible in evidence. *See* Ind.Evidence Rule 802. However, Indiana Evidence Rule 801(d)(2)(A) provides that a statement is not hearsay if "[t]he statement is offered against a party and is [ ] the party's own statement, in either an individual or representative capacity . . . ." This exception is known as the "statement by party-opponent." *See* Evid.R. 801(d)(2)(A). Here, testimonial evidence reveals that Johnson admitted to writing the letters and thus are considered to be his own statements. *See Id.* Clearly, the letters would have been admissible under the "statement by party-opponent" exception. *See id.*

■ Next, Johnson contends that the admission of these letters violated his right to confrontation under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Indiana Constitution. However, Johnson fails to realize that he is the person who wrote the letters. Because Johnson does not have a right to confront himself, this claim has no merit.

■ Last, Johnson claims that his trial counsel should not have stipulated to the admission of the letters because they contained evidence of bad acts in violation of Indiana Evidence Rule 404(b). Specifically, Johnson asserts that the letters connect him to a possible vehicle theft. Rule 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of

the general nature of any such evidence it intends to introduce at trial.

Our review of the record reveals that in his first letter, Johnson states, "I didn't steal [Halloway's] truck." (Appellant's App. p. 365). Then, the record shows that in his second letter Johnson wrote, "[Nicholson] thinks that statement about the truck I gave is what got him in [jail]." (Appellant's App. p. 367). We fail to see how either of these statements constitute uncharged misconduct on the part of Johnson or portray his character in order to show action in conformity therewith. Moreover, his statement, "I didn't steal [Halloway's] truck," suggests a denial of misconduct.

In sum, we do not find that trial counsel's decision to stipulate to the admission of the letters fell below an objective standard of reasonableness based on prevailing professional norms. *See Blanchard,* 802 N.E.2d at 34.

### 2. *Jury Instructions*

#### a. *Failure to Object*

■ Johnson argues that his trial counsel was ineffective for failing to object to the State's Tendered Final Instruction No. 2, which the trial court adopted as Final Instruction No. 5–C. However, "issues not raised in the petition for postconviction relief may not be raised for the first time on post-conviction appeal." *Allen,* 749 N.E.2d at 1171; *see also* P–C.R. 1, § 8. Here, Johnson fails to address this specific claim in either of his petitions for post conviction relief. Therefore, we find this argument waived. *See Allen,* 749 N.E.2d at 1171.

■ Next, Johnson contends that his trial counsel was ineffective for failing to maintain his objection to the State's Tendered Final Instruction No. 3, which the trial court adopted as its Final Instruction No. 5–F, because it was an incorrect state-

ment of law. Regardless of whether the instruction was an incorrect statement of law, the record reveals that after Johnson's trial counsel read over the State's Proposed Final Instruction No. 3, the following discussion occurred:

[DEFENSE COUNSEL]: Right. We would object to State's Proposed Final Number Three. I don't know why it's, certainly an accomplice testified. But by the language it seems to, to give the accomplice witness additional credibility. Competence, competent in the law is not competent in the day to day language of most of us. Competent in the law means able to. Competent in day to day language of the jurors means good at. And we would object to the, to the State's Proposed Final Three even if it is pattern jury instruction.

[STATE]: It is in fact [a] pattern jury instruction. It's basically a mirror image of what you read when the defendant testifies. The defendant is a competent witness to testify in his own case. There is certainly a basis for it. In fact an accomplice did testify. We anticipate he'll be attacked as an accomplice witness during close but whether that anticipation is, proves to be accurate, it is a pattern jury instruction and its purpose and its language are exactly to do the opposite of what [defense] counsel suggests. It says such testimony is to be received and weighed by the jury in the same manner and according to the same rules as the evidence of any other witness. That's the law. It's certainly not error to instruct of that and I think it's, it's, it's probably not error not to either but I think it's certainly justified by the facts in which an accomplice, of a case in which an accomplice witness does in fact testify.

[TRIAL COURT]: Any other objections, [defense counsel]?

[DEFENSE COUNSEL]: I have no objection to one. No objection to two. No objection to four or five. Only objection is to three.

(Record of Proceedings pp. 546–47). Although the trial court accepted the State's Proposed Final Instruction No. 3, Johnson's trial counsel specifically objected to this instruction twice. Therefore, this issue was preserved for appeal. *See* Ind. Crim. Rule 8(B). Accordingly, we find no merit in Johnson's contention that his trial counsel did not maintain his objection.

Last, Johnson asserts that his trial counsel was ineffective for failing to object to the State's Proposed Final Instruction No. 4, which was adopted by the trial court as Final Instruction No. 5–E, because Johnson claims that voluntary intoxication is a defense under Indiana law. To succeed on a claim that counsel was ineffective for failure to make an objection, the defendant must demonstrate that if such objection had been made, the trial court would have had no choice but to sustain it. *Little v. State*, 819 N.E.2d 496, 505 (Ind.Ct.App. 2004), *trans. denied.*

Here, the State's Proposed Final Instruction No. 4 provided:

Voluntary intoxication is not a defense to the charge of [d]ealing in a [s]chedule I [c]ontrolled [s]ubstance or [c]onspiracy to [d]eal in a [s]chedule I [c]ontrolled [s]ubstance. You may not take voluntary intoxication into consideration in determining whether the [d]efendant acted intentionally or knowingly as alleged in the information.

(RP. p. 156). In support of his argument, Johnson relies on former Indiana Code § 35–41–3–5 which provided that "(b) voluntary intoxication is a defense only to the extent that it negates an element of an offense referred to by the phrase with intent to or with the intention to." (Appellant's Br. p. 30). Unfortunately Johnson fails to acknowledge that the Indiana statutes regarding the defense of voluntary

intoxication were amended on July 1, 1997, prior to the date that Johnson was charged for the instant offense, and currently read as follows:

Indiana Code section 35–41–2–5. Intoxication is not a defense in a prosecution for an offense and may not be taken into consideration in determining the existence of a mental state that is an element of the offense unless the defendant meets the requirements of IC [§ ] 35–41–3–5.

Indiana Code section 35–41–3–5. It is a defense that the person who engaged in the prohibited conduct did so while he was intoxicated, only if the intoxication resulted from the introduction of a substance into his body:

(1) without his consent; or

(2) when he did not know that the substance might cause intoxication.

█ In *Sanchez v. State*, 749 N.E.2d 509, 517 (Ind.2001), our supreme court made it clear that Indiana Code §§ 35–41–2–5 and 35–41–3–5 do not allow the defense of voluntary intoxication to negate *mens rea*. Rather, our supreme court found that "the voluntarily intoxicated offender [is] at risk for the consequences of his actions, even if it is claimed that the capacity has been obliterated to achieve the otherwise requisite mental state for a specific crime." *Id.* Here, the record reveals that Johnson admitted to consuming alcohol and two one hundred and fifty milligram trazodone pills. Moreover, he does not assert that the introduction of the alcohol and pills were without his consent or that he didn't know they would cause him to be intoxicated. *See* I.C. § 35–41–3–5. Based upon the clear language of the intoxication statutes and our supreme court's decision in *Sanchez*, we conclude that had Johnson's trial counsel objected to the State's Proposed Final Instruction No. 4, such objection would have been overruled. Therefore, Johnson's trial counsel did not provide ineffective assistance of counsel for failing to object to the State's Proposed Final Instruction No. 4.

### b. *Failure to Propose*

█ Johnson contends that his trial counsel was ineffective for failing to propose a cautionary accomplice testimony instruction. Specifically, Johnson asserts that some sort of instruction should have been given regarding Nicholson's testimony because he was granted use immunity for his testimony incriminating Johnson.

█ The long-standing rule in Indiana has been that any agreement of leniency regarding an accomplice who testifies for the State must be disclosed to the jury, but that a cautionary instruction regarding that witness' credibility need not be given. *Newman v. State*, 263 Ind. 569, 334 N.E.2d 684, 688 (1975); *Morgan v. State*, 275 Ind. 666, 419 N.E.2d 964, 968–69 (1981). In *Morgan*, our supreme court explained Indiana's position as follows:

In *Newman*, we held that the failure to disclose an agreement of leniency between an accomplice and the State constituted reversible error. That holding requires that the agreement be disclosed to the jury, not that a cautionary instruction pertaining thereto be given . . . [S]uch an instruction would have [an] unduly disparag[ing] [effect] on the testimony of the defendants' accomplices, and for this reason, the refusal to give it was proper.

*Morgan*, 419 N.E.2d at 968 (internal citations omitted). Here, Nicholson's "Agreement For Use Immunity" was admitted into evidence. (R.P. p. 57). Moreover, Nicholson testified that, pursuant to a plea agreement, he pled guilty to robbery, confinement, and attempted dealing in a schedule I controlled substance. Considering that the State's agreement of leniency with Nicholson was admitted into

evidence during Johnson's jury trial, and because Indiana does not favor cautionary accomplice testimony instructions, we do not find Johnson's trial counsel ineffective for failing to propose such an instruction.

■ Johnson also maintains that his trial counsel was ineffective in failing to propose a final instruction for the defense of voluntary intoxication. Specifically, Johnson argues that he could not have intended to commit the crime if he was passed out from being intoxicated. However, voluntary intoxication is not a defense to a specific intent crime. *Haggard v. State*, 771 N.E.2d 668, 673 (Ind.Ct.App. 2002), *trans. denied, denial of post-conviction relief affirmed in part and reversed in part on other grounds by Haggard v. State*, 810 N.E.2d 751 (Ind.Ct.App.2004); *see also Albaugh v. State*, 721 N.E.2d 1233, 1235 (Ind.1999) (recognizing that dealing in a controlled substance is a specific intent crime). Therefore, had Johnson's trial counsel submitted a voluntary intoxication instruction to negate Johnson's intent, such instruction would properly have been denied by the trial court. Accordingly, we do not find Johnson's trial counsel ineffective for failing to propose such an instruction.

### 3. *Burden of Proof*

■ Next, Johnson asserts that his trial counsel was ineffective in failing to hold the State to its burden of proving every element of the offense charged. Specifically, Johnson argues that the State did not prove that the methcathinone was a "finished product." In the instant case, Count I of Johnson's amended charging information reads: "On or about August 2, 1997, in Lawrence County, Indiana, [Johnson] did knowingly manufacture methcathinone, a controlled substance classified in schedule I." (R.P. p. 56).

Indiana Code § 35–48–1–18 defines "manufacture" in pertinent part as:

the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, either directly or indirectly by extraction from substances of natural origin, independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container.

Therefore, the State was required to prove beyond a reasonable doubt that Johnson knowingly or intentionally prepared methcathinone.

Our review of the record reveals that during Johnson's jury trial, Shiel, the State's drug analyst, testified that one of the substances obtained at Fisher's house, although not in usable form, tested positive for "methcathinone." (R.P. p. 500). Shiel testified that in order for the methcathinone to be in usable form, "all that would have needed to be done was to evaporate the xylene off the top of the crystals." (R.P. p. 512). Shiel's testimony also revealed that "[o]nce you bubble that gas through there it crystallizes out almost immediately. Maybe give it a few minutes." (R.P. p. 512). Clearly, Shiel's testimony reveals that Johnson was producing, or at the very least preparing, the extraction of methcathinone. Nevertheless, nowhere in Indiana Code § 35–48–1–18 is there a requirement that the State prove the manufactured schedule I controlled substance be a "finished product" as Johnson claims. Accordingly, we do not find Johnson's trial counsel ineffective in failing to pursue a line of questioning regarding whether the methcathinone was a finished product.

### 4. *Ineffective Cross Examination*

#### a. *Shiel*

■ First, Johnson claims that his trial counsel was ineffective in failing to cross-

examine Shiel as to whether the methcathinone was a finished product. However, as we held above, the State was not required to prove that the methcathinone was a finished product. Therefore, even if Johnson's trial counsel had specifically adduced from Shiel that the methcathinone was not a "finished product," the result of the proceeding would not have been different.[5] *See Blanchard,* 802 N.E.2d at 34. Accordingly, Johnson's trial counsel was not ineffective in failing to specifically ask Shiel if the methcathinone was a finished product.

### b. *Nicholson*

■ Next, Johnson contends that his trial counsel was ineffective for not cross-examining Nicholson to show that Nicholson had been threatened by the State into testifying against Johnson. Johnson claims that his trial counsel knew that Nicholson had been threatened by the State and refused to question Nicholson about the circumstances of the threats. In support of this claim, Johnson also relies on an affidavit, filed three years after Johnson's jury trial, in which Nicholson claims that the State threatened to give him a longer sentence if he did not testify against Johnson.

We note that counsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption. *Blanchard,* 802 N.E.2d at 34. The only evidence offered by Johnson is an affidavit from Nicholson, which was filed three years after Johnson's jury trial. Moreover, Johnson does not direct us to any part of the record which his trial counsel could have used to support allegations of threats made against Nicholson. As such, we find that Johnson failed to provide strong and convincing evidence that his trial counsel's

decision not to cross-examine Nicholson about alleged threats made by the State constituted ineffective assistance of counsel.

### 5. *Failure To Call Witnesses*

■ Johnson claims that his trial counsel was ineffective in failing to call Dr. Shadiwani and McVicker as witnesses. We must note that a decision regarding what witnesses to call is a matter of trial strategy which an appellate court will not second-guess. *Brown v. State,* 691 N.E.2d 438, 447 (Ind.1998); *see also Wrinkles v. State,* 749 N.E.2d 1179, 1200 (Ind.2001) (stating that the decision of which witnesses to call is "the epitome of a strategic decision") (citation omitted).

■ First, Johnson claims that his trial counsel should have called Dr. Shadiwani as a witness because he could have testified as to Nicholson's reputation for untruthfulness. Specifically, Johnson argues that Dr. Shadiwani would have proffered the following: "I know [Nicholson] to be a liar because he kidnap[p]ed and robbed me, he lied about a gun, a police scanner, and other things." (Appellant's App. p. 390). Clearly, Dr. Shadiwani's statements would have been inadmissible under Indiana Rule of Evidence 608(b), which provides that "[f]or the purpose of attacking or supporting the witness's credibility, other than conviction of a crime as provided in Rule 609, specific instances may not be inquired into or proven by extrinsic evidence." Accordingly, Johnson's trial counsel was not ineffective in failing to call Dr. Shadiwani as a witness.

■ Next, Johnson asserts that his trial counsel should have called McVicker as a witness because he would have testified that he did not see Johnson at Fisher's

---

**5.** Although Shiel did not specifically testify that the methcathinone was not a finished product, Johnson's trial counsel did elicit testimony from Shiel that the "xylene would have to be evaporated off before [the methcathinone] could be used." (RP. p. 512).

house. In support of his argument, Johnson relies on an affidavit from McVicker, in which McVicker states that on the day Johnson was arrested, he rode his four-wheeler past Fisher's house several times and did not see Johnson outside the house. At the post-conviction hearing Johnson's trial counsel testified that because McVicker was in Florida and his testimony could not have completely exonerated Johnson, he determined it would not benefit Johnson to delay the trial to obtain McVicker. The mere fact that McVicker did not see Johnson on the occasions when McVicker rode by Fisher's house does not mean that Johnson was not there at other times that day. Accordingly, we find no deficient performance in counsel's decision not to call this witness. *See Brown,* 691 N.E.2d at 447–48.

### 6. *Failure to Impeach*

 Johnson claims his trial counsel was ineffective in failing to fully impeach the testimony of Nicholson.[6] Specifically, Johnson argues that his trial counsel, during cross-examination, should have questioned Nicholson about his entire criminal history. Our review of the record reveals that during Johnson's jury trial the State elicited from Nicholson that prior to Johnson's jury trial Nicholson pled guilty to manufacturing methcathinone, robbery, and confinement. Thereafter, during Johnson's trial counsel's cross-examination of Nicholson, Nicholson testified that he was out on bail for robbery and confinement when he was charged with manufacturing methcathinone. Johnson's trial counsel also elicited testimony from Nicholson that he faced over one hundred years in prison before he signed his plea

agreement. Johnson's trial counsel testified at the post-conviction hearing that he did not impeach Nicholson with all his prior convictions because he believed that the evidence he presented sufficiently demonstrated to the jury that Nicholson was "incredible," and further impeachment evidence would only have been cumulative. (PCR Tr. pp. 234–35). We fail to see how the introduction of additional impeachment evidence against Nicholson would have resulted in a different outcome. *See Blanchard,* 802 N.E.2d at 34. Therefore, this ineffective assistance claim fails.

### 7. *Motion to Suppress*

 Johnson contends that his trial counsel was ineffective for not correctly filing a motion to suppress the testimony of Nicholson. Specifically, Johnson asserts that his trial counsel failed to cite any case law or authority in support of the motion. In support of this contention, Johnson relies on *Speed v. State,* 500 N.E.2d 186 (Ind.1986). However, in *Speed,* our supreme court held an issue waived on review because the appellant failed to cite to any authority in his appellant's brief, not during trial in support of a motion to suppress. *Id.* at 190. Because Johnson devotes only one sentence to this ineffective assistance claim and fails to cite any relevant case law, we find this issue waived. *See* App.R. 46(A)(8)(a); *Blanchard,* 802 N.E.2d at 28.

### 8. *State's Closing Argument*

Johnson contends that his trial counsel was ineffective for not objecting to the State's references to the two letters written by Johnson during their closing argu-

---

6. Johnson attempts to argue that a *Brady* violation occurred because Nicholson's plea agreement fails to mention that the State dismissed his charges for robbery and confinement. *See Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

However, "[i]ssues not raised in the petition for post-conviction relief may not be raised for the first time on post-conviction appeal." *Allen,* 749 N.E.2d at 1171; *see also* P–C.R. 1, § 8. Therefore, this claim is unavailable here.

ment. Specifically Johnson claims that his trial counsel should have objected because the letters were hearsay and misrepresented the facts. As we discussed above, any objection made to the admission of the letters would not have been sustained. Therefore, Johnson's trial counsel was not ineffective in failing to object to the reference of the letters in the State's closing argument. *See Smith,* 765 N.E.2d at 585.

### 9. Trial Counsel's Opening and Closing Arguments

■ Next, Johnson argues that his trial counsel was ineffective in that he "blatantly testified" against Johnson in his opening and closing arguments. Testify means "[t]o give evidence as a witness." BLACK'S LAW DICTIONARY 1514 (8th ed.2004). Johnson's trial counsel clearly did not testify against him as he was not a witness during the jury trial. However, Johnson's trial counsel did testify at the post-conviction hearing that as a matter of trial strategy he argued that Johnson was at Fisher's house but was too intoxicated to have participated in the manufacturing of the methcathinone. We do not see how this theory prejudiced Johnson in any way considering he was found by Bedford City Police Officers unconscious on Fisher's property six feet from where the methcathinone was being produced. *See Blanchard,* 802 N.E.2d at 34.

### 10. Change of Venue and Change of Judge

■ Lastly, Johnson contends that his trial counsel was ineffective in failing to perfect a change of venue and change of judge. Specifically, Johnson claims that these two motions were taken under advisement by the trial court for longer than the ninety-day time period, in violation of Indiana Trial Rule 53.2(A). Although Johnson cites the correct trial rule, he fails to support this contention with citation to the record or relevant case law. Accord-

ingly, we find this argument waived. *See* App.R. 46(A)(8)(a); *Blanchard,* 802 N.E.2d at 28.

### C. Sentencing Counsel

■ Johnson asserts that his sentencing counsel was ineffective because he failed to investigate and present any mitigating circumstances during Johnson's sentencing hearing. In support of his position, Johnson relies on *Averhart v. State,* 614 N.E.2d 924, 930 (Ind.1993), where our supreme court found ineffective representation when sentencing counsel threw his client on the mercy of the court and relied solely on the pre-sentence report to produce mitigating evidence. Johnson's reliance on *Averhart* is misplaced because here his sentencing counsel did present a mitigating circumstance to the trial court. Specifically, sentencing counsel argued that, "this is a crime with circumstances very unlikely to recur." (R.P. pp. 590–91). Moreover, Johnson does not even argue what mitigating circumstances were available for his counsel to present to the trial court. In fact, our review of Johnson's pre-sentence investigation report revealed that he has a rather lengthy criminal history. Therefore, we find that Johnson has failed to demonstrate that he received ineffective assistance of counsel because he does not provide any evidence as to how the result of his sentencing hearing would have been different if his counsel would have argued more or different mitigating circumstances. *See Blanchard,* 802 N.E.2d at 34.

### D. Appellate Counsel

Finally, Johnson argues that he received ineffective assistance of appellate counsel. Specifically, Johnson contends that his appellate counsel failed to include several issues on his direct appeal. We review claims of ineffective assistance of appellate

counsel using the same standard applicable to claims of trial counsel ineffectiveness. *Little*, 819 N.E.2d at 506. The defendant must show that appellate counsel was deficient in his performance and that the deficiency resulted in prejudice. *Id.*

 Ineffective assistance claims at the appellate level of proceedings generally fall into three basic categories: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Id.* We employ a two-part test to evaluate "waiver of issue" claims: (1) whether the unraised issues are significant and obvious from the face of the record, and (2) whether the unraised issues are "clearly stronger" than the raised issues. *Id.*

 First, Johnson claims that his appellate counsel was ineffective in failing to raise the following issues on direct appeal: (1) whether the trial court abused its discretion in denying Johnson's motion for change of venue; (2) whether the trial court abused its discretion in denying Johnson's motions for change of judge; (3) whether the trial court erred in allowing the State to amend Johnson's charging information from attempted dealing to dealing; (4) whether the trial court erred in denying Johnson's motion to suppress Nicholson's testimony; (5) a hearsay issue; (6) due process violation issues; and (7) whether Johnson's trial counsel was ineffective. Further, Johnson argues that his appellate counsel was ineffective for not pursuing a *Davis/Hatton* proceeding. However, Johnson failed to present a coherent argument or cite to proper authority in support of these claims. Generally, a party waives any issue raised on appeal where the party fails to develop a coherent argument or provide adequate citation to authority. *See* App.R. 46(A)(8)(a); *Blanchard*, 802 N.E.2d at 28. Thus, these claims are waived. *Id.*

 Johnson's only remaining contention is that his appellate counsel was ineffective in failing to argue on direct appeal that Johnson's trial counsel was ineffective in failing to object to the State's Proposed Final Instruction No.'s 2, 3, and 4. However, Johnson fails to assert how these issues are clearly stronger than the issues raised on direct appeal. *See Little*, 819 N.E.2d at 506. Therefore, these claims fail.

### CONCLUSION

Based on the foregoing, we conclude that (1) Judge Robbins properly presided over Johnson's post-conviction hearing; (2) the post-conviction court did not err when it denied Johnson's motion to subpoena witnesses; (3) the post-conviction court did not err in denying Johnson's claim of newly discovered evidence; and (4) Johnson did not receive ineffective assistance of trial, sentencing, or appellate counsel.

Affirmed.

SULLIVAN, J., and NAJAM, J., concur.