## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 14 2016, 7:03 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

| | |
|---|---|
| APPELLANT PRO SE | ATTORNEYS FOR APPELLEE |
| Rodney Mosby<br>Westville, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana<br><br>Eric P. Babbs<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Rodney Mosby,<br>*Appellant-Petitioner,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Respondent.* | January 14, 2016<br><br>Court of Appeals Case No.<br>71A05-1503-PC-103<br><br>Appeal from the St. Joseph Superior Court<br><br>The Honorable John M. Marnocha, Judge<br><br>Trial Court Cause No.<br>71D02-1404-PC-19 |

**Riley, Judge.**

# STATEMENT OF THE CASE

[1] Appellant-Petitioner, Rodney Mosby (Mosby), appeals the post-conviction court's denial of his petition for post-conviction relief.

[2] We affirm.

# ISSUE

[3] Mosby raises two issues on appeal, which we restate as the following single issue: Whether Mosby was denied effective assistance of trial counsel.

# FACTS AND PROCEDURAL HISTORY

[4] The facts most favorable to Mosby's conviction were set forth in this court's opinion in Mosby's direct appeal as follows:

> On the morning of May 1, 2012, Williams withdrew $400 from an ATM, stopped at a 7-11 for cigarettes and a drink, and went to a friend's [] house. Orlando, another friend of Williams'[], was supposed to be going to court that day, and Williams planned to meet him at the house and give him money to help make bail. When Williams arrived, he found only Mosby and Howard, both in the downstairs living room. Howard told Williams that Orlando had already gone to court, and Williams left. As Williams walked away from the house, Howard yelled at him to return, saying that Orlando was on the telephone.
>
> Williams returned to find Howard on the stairs and Mosby lying on a couch. Howard handed Williams the telephone, walked past him, slammed the door shut, put a handgun to Williams'[] head, and demanded that he "come off everything [,]" which Williams understood as a demand that he hand over anything of value. Howard handed the telephone to Mosby, saying, "Hey, Bro, come on, take the phone." Mosby said, "Just give him everything, so you won't make it a worser [sic] situation or get yourself hurt." When Williams did not

initially comply with Howard's demands, Howard struck him on the head with the grip of the handgun. Williams threw all of his cash on the ground, and Howard ordered him to leave.

A neighbor saw three men on the porch, and heard one of them say, "You hit me in the head, and now you took my money." Williams called police and said that he had been robbed by two men. As Mosby and Howard walked away from the house, the neighbor overheard one say to the other, "Oh, he ain't going to do nothing." South Bend Police Officer James Dennin soon arrived and observed Mosby and Howard walking in an alley. When Officer Dennin identified himself as a police officer and yelled at the duo to stop, they turned, looked, and ran off down the alley. Mosby and Howard were apprehended soon thereafter, Mosby had $100.00 on his person and Howard had $278.00.

*Mosby v. State*, No. 71A04-1209-CR-469 (Ind. Ct. App. May 17, 2013) (internal citations omitted).

[5] On May 2, 2012, the State charged Mosby with Count I, robbery with a deadly weapon, a Class B felony; Count II, robbery, a Class B felony; and Count III, resisting law enforcement, a Class A misdemeanor. Mosby's jury trial commenced on July 31, 2012 and concluded on August 1, 2012. At the close of the evidence, the jury found Mosby guilty as charged. On August 29, 2012, the trial court held Mosby's sentencing hearing, where it merged Count II into Count I. On Count I, the trial court sentenced Mosby to fifteen years in the Department of Correction (DOC), and one year on Count III. Mosby's sentences were to run concurrently.

[6] Mosby appealed. On appeal, Mosby argued that there was insufficient evidence to sustain his robbery conviction; the trial court abused its discretion by

excluding certain evidence; and the trial court's *vior dire* amounted to a fundamental error. On May 17, 2013, we affirmed Mosby's conviction and sentence.

[7] On March 26, 2014, Mosby filed a *pro se* petition for post-conviction relief alleging ineffective assistance of his trial and appellate counsels. With respect to Trial Counsel, Mosby argued that she failed to (1) tender an instruction on theft as a lesser-included offense of robbery, (2) object to the sentence imposed, (3) object to the trial court's response to a jury question posed during deliberations, and (4) file a motion to dismiss with respect to Counts I and II. As for Appellate Counsel, Mosby argued that counsel was ineffective for failing to raise the above four issues on his direct appeal.

[8] On December 10, 2014, the post-conviction court held an evidentiary hearing. At the close of the evidence, the post-conviction court took the matter under advisement. On February 13, 2015, the post-conviction court issued its findings of fact and conclusions of law denying Mosby's petition.

[9] Mosby now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[10] Under the rules of post-conviction relief, the petitioner must establish the grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1, § 5; *Strowmatt v. State*, 779 N.E.2d 971, 974–75 (Ind. Ct. App. 2002). To succeed on appeal from the denial of relief, the post-conviction petitioner must show that the evidence is without conflict and leads unerringly and

unmistakably to a conclusion opposite that reached by the post-conviction court. *Id*. at 975. The purpose of post-conviction relief is not to provide a substitute for direct appeal, but to provide a means for raising issues not known or available to the defendant at the time of the original appeal. *Id*. If an issue was available on direct appeal but not litigated, it is waived. *Id*.

## II. *Ineffective Assistance of Counsel*

[11] Mosby contends that he was denied the effective assistance of Trial Counsel. The standard by which we review claims of ineffective assistance of counsel is well established. In order to prevail on a claim of this nature, a defendant must satisfy a two-pronged test, showing that: (1) his counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Johnson v. State*, 832 N.E.2d 985, 996 (Ind. Ct. App. 2005), (citing *Strickland v. Washington*, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *reh'g denied, trans. denied*). The two prongs of the *Strickland* test are separate and independent inquiries. *Johnson*, 832 N.E.2d at 996. Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001), *reh'g denied, cert. denied*, 537 U.S. 839 (2002) (quoting *Strickland*, 466 U.S. at 697).

[12] Counsel is afforded considerable discretion in choosing strategy and tactics and we will accord those decisions deference. *Timberlake*, 753 N.E.2d at 603. A

strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. The *Strickland* Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. *Id*. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id*. Furthermore, we will not speculate as to what may or may not have been advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best. *Johnson*, 832 N.E.2d at 997.

[13] Although he raised four issues with respect to Trial Counsel's performance, Mosby only challenges two, namely, (1) counsel failed to tender an instruction on theft as a lesser-included offense of robbery, and (2) counsel failed to object to the trial court's response to a jury question posed during deliberations. We will address each issue in turn.

## A. *Jury Instructions*

[14] Mosby first argues that he received ineffective assistance of Trial Counsel because she failed to tender an instruction on theft as a lesser-included offense of robbery. We disagree. Theft requires the knowing or intentional exertion of unauthorized control over the property of another person with the intent to deprive the other person of any part of the property's value or use. Ind. Code § 35-43-4-2 (2012). Robbery requires the same elements, as well as the use of threat or force. I.C. § 35-42-5-1 (2012). The State charged Mosby with robbery,

but could have established that Mosby committed theft by proving the elements of robbery, less the use of force. Therefore, theft is inherently included in a robbery charge.

[15] Because theft is inherently included in a robbery charge, we must determine whether a serious evidentiary dispute existed concerning the element distinguishing the two crimes—use of force—whereby the jury could have concluded that Mosby had committed theft but not robbery. *Wright v. State*, 658 N.E.2d 563, 567 (Ind. 1995).

[16] Despite Mosby's claim, there was no dispute that force was used to procure money from Williams. Williams testified that when Howard first accosted him, Mosby was sleeping on the couch. Williams testified that when he failed to assent to Howard's demands, Mosby instructed him to give Howard everything lest he make the situation worse or get himself hurt. After Howard pistol-whipped Williams, Williams dropped all of his cash on the ground and left. Howard and Mosby left together and attempted to flee when they were spotted by police. When the duo was apprehended, Howard was in possession of $278.00, and Mosby, $100.00.

[17] As stated above, we are also mindful not to speculate as to what may or may not have been advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best. *Johnson*, 832 N.E.2d at 997. The post-conviction court noted that Trial Counsel set the tone for her trial strategy by presenting evidence that the

money Mosby had on his person came from sources other than Williams. Trial Counsel elicited testimony from Mosby's co-defendant, Howard, that Mosby had nothing to do with the robbery and was asleep at the time. Trial Counsel also elicited evidence that Mosby only ran from the police because he had marijuana in his pocket and did not want to get caught. Conversely, the jury accepted Williams' rendition of the events, *i.e.*, that Mosby was an active participant in the robbery.

[18] In light of Williams' testimony regarding Mosby's threat to give up the money, we, like the post-conviction court, conclude that there was no dispute by which the jury could conclude that the lesser offense of theft was committed but not the greater offense of robbery. That said, we find that Mosby has failed to show that his Trial Counsel's performance was deficient or that he was prejudiced as a result of counsel's failing to tender an instruction on theft as a lesser-included offense of robbery.

## 2. *Jury Question*

[19] Lastly, Mosby argues that Trial Counsel rendered him ineffective assistance by failing to object to the trial court's response to a jury question posed during deliberations. The record shows that during the course of deliberations, the jury asked, "[D]oes receiving money from a robbery make you guilty of robbery?" (DA. Tr. p. 424). The court's response was

> I cannot answer your question. You are the judges of both the law and
> the facts. It is for you to determine whether the State has proven
> elements of the charged offenses beyond reasonable doubt.

(DA. Tr. p. 425). The trial court's written response was then delivered to the jury. Specifically, Mosby argues that he was prejudiced by Trial Counsel's failure to object to the "trial court's refusal to determine whether and how the court and counsel could assist the jury in their deliberative process . . ." (Appellant's Br. p. 6).

[20] In its findings, the post-conviction court noted the provisions of Indiana Code section 34-36-1-6 providing that:

> If, after the jury retires for deliberation:
> (1) there is a disagreement among the jurors as to any part of the testimony; or
> (2) the jury desires to be informed as to any point of law arising in the case;
>
> the jury may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or the attorneys representing the parties.

[21] Our supreme court has interpreted the statute to require that juries expressly manifest a disagreement about the testimony in order for the statute to apply, and that a jury request is not in itself an inherent expression of disagreement such that the statute would automatically be triggered. *Bouye v. State*, 699 N.E.2d 620, 627-28 (Ind. 1998). In light of the above statute, the post-conviction court concluded that "the question did not indicate a disagreement among the jurors as to any part of the testimony." (Appellant's App. p. 79).

[22] Here, the parties presented all of the evidence to the jury during the course of the two-day trial, and the trial court instructed the jury as to the applicable law,

including the State's role in proving Mosby's guilt, the jury's role in evaluating the evidence, and in applying and determining the law and the facts.

[23] Further, the post-conviction court noted that a response of yes or no would have been an equivalent of the trial court directing the jury as to what verdict should be. We agree. We note that a trial court is not required to provide information "automatically and mechanically every time the jury requests it." *Foster v. State*, 698 N.E.2d 1166, 1170 (Ind. 1998). Rather, the trial court should initially exercise discretion in determining whether it should answer certain questions of the jury. *Id*. Properly exercising its role, the trial court discreetly and concisely provided the jury with guidance to facilitate deliberations. In light of the foregoing, we conclude that Mosby has failed to prove that Trial Counsel provided ineffective assistance for failing to pursue a response from the trial court.

## CONCLUSION

[24] Based on the foregoing, we conclude that the post-conviction court properly denied Mosby's petition for post-conviction relief because he did not receive ineffective assistance of Trial Counsel.

[25] Affirmed.

[26] Najam, J. and May, J. concur