**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Nov 07 2012, 9:24 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**ADRIAN LOTAKI**
Westville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ADRIAN LOTAKI, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 71A03-1106-PC-284 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable John M. Marnocha, Judge
Cause No. 71D02-0709-PC-35 & 71D02-0509-FB-123

**November 7, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Petitioner, Adrian Lotaki (Lotaki), appeals the post-conviction court's denial of his petition for post-conviction relief.

We affirm.

## ISSUES

Lotaki raises five issues on appeal, which we consolidate and restate as the following three issues:

(1) Whether the post-conviction court properly denied Lotaki's petition without holding an evidentiary hearing;

(2) Whether the trial court abused its discretion by admitting Lotaki's letter; and

(3) Whether Lotaki's trial counsel was effective.

## FACTS AND PROCEDURAL HISTORY

We adopt this court's statement of facts as set forth in our memorandum opinion issued in Lotaki's direct appeal, *Lotaki v. State*, No. 71A03-0604-CR-145 (Ind. Ct. App. Nov. 21, 2006):

> Lotaki lived with K.C. in the past and is the father of K.C.'s two-year-old daughter. In the early morning hours of September 18, 2005, Lotaki and a friend went to K.C.'s apartment, where K.C. and her daughter were sleeping. Lotaki knocked on the door but there was no response, so he forced the locked door open to enter the apartment. Lotaki went to K.C.'s bedroom, woke her up, and told her that he had kicked the door open. After inspecting the door, K.C. asked Lotaki to leave but he insisted on staying there with his friend. K.C. acquiesced, and when she went to her bedroom, Lotaki followed her.
>
> Once in the bedroom, Lotaki pushed K.C. onto the bed and demanded anal sex. K.C. cried and pled with Lotaki to stop, but he did not. Rather, he

2

called her names and threatened to hit or kill her if she refused. According to K.C., Lotaki has hit and threatened her many times in the past. As such, she complied with Lotaki's demand. Lotaki forced K.C. to have both vaginal and anal sex with him. Afterwards, K.C. lay in bed and pretended to be asleep until Lotaki fell asleep, and then she took some clothes and her daughter and went to her mother's house.

K.C. then went to the hospital to be examined. Elizabeth Simeri (Simeri), a certified sexual assault nurse examiner, examined her. According to Simeri, K.C.'s demeanor when she arrived at the hospital was consistent with that of a victim of a sexual assault. Simeri also discovered that K.C. was bleeding from the anus, which is consistent with anal intercourse. At the hospital, K.C. reported the incident to police, who then went to K.C.'s apartment and arrested Lotaki, whom they found sleeping naked in K.C.'s bed.

The State charged Lotaki with criminal deviate conduct as a Class B felony and residential entry, as a Class D felony. At trial, Lotaki admitted that he had anal intercourse with K.C. but claimed that it was consensual. The State also introduced into evidence a letter that Lotaki sent while in jail to the friend who had been at K.C.'s apartment with him. Lotaki wrote, in pertinent part:

> Bad news. This B**** is really going to testify. Peep game, I wrote a letter to the b**** and told her I ain't gone be mad at her if she call the prosicutor and say she want to drop the charges. She's a grimy b**** so I had my sister read it to her. I guess the b**** done talk to the prosicutor and said she'll be there. All I can say is she better pray to god I get convicted and they give me life. Cause you know I do this little ten years, its on! I might even get less, thats the max. F**** it, pull the Gijad cuz whack her, Nah, I'm just f***** with you. But on the real you should call Jenny and tell her to take care of it [ ] you know pop up at her work sit at her table give her a firm warning, s*** like that. See I know I was out on bond this s*** would not be going down.

(State's Exh. 26) (multiple misspellings in original). Lotaki also suggested to his friend what to say in court if called to testify.

The jury found Lotaki guilty as charged. . . . The court sentenced Lotaki to fifteen years for the Class B felony criminal deviate conduct conviction and two years for the Class D felony residential entry conviction. . . . [T]he trial

court ordered that the sentences be served consecutively, for a total executed sentence of seventeen years[.]

Lotaki appealed. On appeal, Lotaki raised two issues: he challenged the sufficiency of evidence presented to support his conviction for criminal deviate conduct and the appropriateness of his sentence. We affirmed the trial court.

On September 18, 2007, Lotaki filed a petition for post-conviction relief, which he amended on September 17, 2010. Thereafter, on May 26, 2011, the post-conviction court denied Lotaki's petition without conducting an evidentiary hearing.

Lotaki now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Standard of Review*

Under the rules of post-conviction relief, the petitioner must establish the grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5): *Strowmatt v. State*, 779 N.E.2d 971, 974-75 (Ind. Ct. App. 2002). To succeed on appeal from the denial of relief, the post-conviction petitioner must show that the evidence is without conflict and leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id*. at 975. The purpose of post-conviction relief is not to provide a substitute for direct appeal, but to provide a means for raising issues not known or available to the defendant at the time of the original appeal. *Id*. If an issue was available on direct appeal but not litigated, it is waived. *Id*.

I. *Lack of Evidentiary Hearing*

4

Lotaki contends that the post-conviction court erred in refusing to grant him an evidentiary hearing prior to denying his petition for post-conviction relief. At the State's request, the post-conviction court decided the merits of Lotaki's claim without a hearing, pursuant to Ind. Post-conviction Rule 1(4)(g).

A trial court is not permitted to summarily deny a petition for post-conviction relief unless "it appears from the pleadings, depositions, answers to interrogatories, admissions, stipulations of fact, and any affidavits submitted, that there is no genuine issue of material fact and [the State] is entitled to judgment as a matter of law." P-C.R. 1(4)(g). If an issue of material fact is raised by the allegations of the petition, "the court shall hold an evidentiary hearing as soon as reasonably possible." *Id.* A hearing is mandatory even when the petitioner has only a remote chance of establishing his claim. *Evolga v. State*, 722 N.E.2d 370, 373 (Ind. Ct. App. 2000). An evidentiary hearing is not required, however, in the absence of "specific factual allegations in support of the claim" alleged by the petitioner. *Id.* By the same token, when the petition for post-conviction relief "conclusively demonstrates that the petitioner is entitled to no relief, a hearing on the matter is unnecessary and the petition may be denied without further proceedings." *Truitt v. State*, 853 N.E.2d 504, 507 (Ind. Ct. App. 2006). In other words, where the post-conviction court is able to determine, after reading the petition and consulting the record, that there is no factual issue in dispute, a summary denial of the petition is proper. *Godby v. State*, 809 N.E.2d 480, 483 (Ind. Ct. App. 2004), *trans. denied*.

Here, Lotaki raised the following issues in his petition for post-conviction relief: (1) the admissibility of Lotaki's letter based upon its discovery on the morning of trial;

(2) the high prejudicial value of the letter; (3) the trial court's refusal to grant a continuance due to the untimely discovery of the letter; (4) nurse Simeri's qualification as an expert witness; and (5) ineffective assistance of trial counsel for failing to object to the admissibility of evidence and qualification of the expert witness.

Although at first glance Lotaki appears to raise issues of material fact when focusing on the trial court's decision with respect to the letter and qualification of the expert witness, these allegations amount to issues which could have been raised on direct appeal. As such they are freestanding claims and are barred in post-conviction proceedings. *See Baer v. State*, 942 N.E.2d 80, 90 (Ind. 2011). The remaining claim of ineffectiveness of trial counsel did not present any issue of material fact and was determined by the post-conviction court based upon its evaluation of the record. Therefore, the post-conviction court was not required to conduct an evidentiary hearing.

II. *The Admissibility of Lotaki's Letter*

Next, Lotaki argues that the trial court abused its discretion by admitting his letter. Specifically, he contends that "because of the blatant neglect [by the State] in disclosing the letter in a timely manner, the defendant was unable to make informed decisions during pre- or during actual trial." (Appellant's Br. p. 27). It is well established that the post-conviction process allows a petitioner to raise challenges that were not known at the time of the original trial or available at the time of the direct appeal. *Hooker v. State*, 799 N.E.2d 561, 570 (Ind. Ct. App. 2003), *trans. denied*. Issues that were known and available but not raised on direct appeal are waived and, thus, are unavailable for post-

conviction review. *Id.* Here, Lotaki's claim was known and available on direct appeal, and as such it is waived.

### III. *Ineffective Assistance of Counsel*

Lotaki contends that he was denied the effective assistance of trial counsel. The standard by which we review claims of ineffective assistance of counsel is well established. In order to prevail on a claim of this nature, a defendant must satisfy a two-pronged test, showing that: (1) his counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Johnson v. State*, 832 N.E.2d 985, 996 (Ind. Ct. App. 2005), *trans. denied* (citing *Strickland v. Washington*, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *reh'g denied*). The two prongs of the *Strickland* test are separate and independent inquiries. *Johnson*, 832 N.E.2d at 996. Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Timberlake*, *v. State*, 753 N.E.2d 591, 603 (Ind. 2001), *reh'g denied, cert. denied*, 537 U.S. 839 (2002) (quoting *Strickland*, 466 U.S. at 697).

Counsel is afforded considerable discretion in choosing strategy and tactics and we will accord those decisions deference. *Timberlake*, 753 N.E.2d at 603. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* The *Strickland* Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. *Id.* Isolated

mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id.* Furthermore, we will not speculate as to what may or may not have been advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best. *Johnson*, 832 N.E.2d at 997.

Lotaki argues that he received ineffective assistance of trial counsel. Specifically, he urges us to find that his trial counsel was ineffective for: (1) failing to object to the admission of his letter because of its untimely discovery; (2) failing to object to the admission of the letter based on Indiana Evidence Rules 401, 403, and 404(b); and (3) failing to object to the qualification of the State's witness as an expert witness.

### 1. *Objections to Lotaki's Letter*

On the morning of the second day of the trial and prior to the seating of the jury, the State requested a conference and informed the trial court that "this morning I was advised that the defense witness [] had received a letter from the defendant, that may have implicated some admissions of guilt as well as a threat to the complaining witness." (Appellant's App. p. 47). After the trial court issued an order to the county jail to release the letter, the letter was labeled as State's exhibit 26 and admitted by the trial court. Lotaki now contends that his counsel was ineffective because he failed to object to the admission of the letter based on its untimely discovery and based on Indiana Evidence Rules 401, 403, and 404(b).

The record reflects that prior to the admission of the letter, Lotaki's counsel objected because it was unclear how long the county jail had known of the existence of

8

the letter and thus, the discovery was "late." (Appellant's App. p. 77). In addition, counsel also objected on the basis of relevancy (Evid. R. 401) and unfair prejudice (Evid. R. 403). Because counsel objected on these grounds, Lotaki cannot now claim that his counsel performed below professional norms for failing to object.

Turning to Lotaki's claim with respect to an Evid. R. 404(b) objection—prior bad act evidence—we note that although his counsel did not raise this objection, the trial court nevertheless considered the rule's application. In considering the admissibility of the letter, the trial court stated

> Even in looking under a 404 analysis to see whether or not these are other acts of the defendant, *there is nothing that was said in the letter which in my opinion would be admissible under 404 as other act evidence*. Character is not at issue in this case so it can't come in that way.

(Appellant's App. p. 76) (emphasis added). Thus it is clear, that if trial counsel would have made the objection, the trial court would have sustained it. Nevertheless, ultimately, the trial court did not admit the letter based on Evid. R. 404(b) but decided that

> That portion of the letter that I read to the parties concerning the breaking in to the apartment is admissible in the State's case in chief. The rest of the letter is not admissible in the State's case in chief.
> However, to the extent that the defendant and/or [the defendant's witness] may testify in this case, then the content of the letter is admissible as it relates to a couple of things.
> Number one, the eliciting by the defendant of another person to help with his case, which includes what the defendant wanted the other witness to testify. It goes towards bias, it goes towards intent in cross-examination, it goes towards truthfulness in cross-examination, if the witness testifies contrary to this, it goes to that. And if the witness testified consistent with this, then it goes to the motive to that.
> So that's my ruling on the letter.

(Appellant's App. pp. 76-77).  Even though trial counsel failed to make an Evid. R. 404(b) objection, which would have been sustained by the trial court, the result of the proceeding would not have been different as the trial court considered Evid. R. 404(b) and nevertheless subsequently admitted the letter on different grounds.[1]

### 2. *State's Expert Witness*

Lastly, Lotaki contends that his trial counsel was ineffective for failing to object to the testimony of nurse Simeri.  Specifically, he asserts that because nurse Simeri is a "physical examiner," she testified outside the scope of her expertise when describing K.C.'s demeanor.  (Appellant's Br. p. 47).

Indiana Evidence Rule 702 provides:

(a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
(b) Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable.

Under this rule, a witness may be qualified as an expert by virtue of "knowledge, skill experience, training, or education."  Because only one characteristic is necessary to qualify an individual as an expert, a witness may qualify as an expert on the basis of practical experience alone.  *Kubsch v. State*, 784 N.E.2d 905, 921 (Ind. 2003).

While Lotaki does not dispute nurse Simeri's qualification as an expert witness, he claims that his counsel should have objected to her testimony characterizing K.C.'s

---

[1] As a minor issue, Lotaki asserts that he would have pled guilty if he had known about the letter prior to trial.  This claim is disingenuous at best, as Lotaki admitted during his trial testimony that he had authored the letter.

behavior during the physical exam as consistent with the behavior of a sexual assault victim. We disagree. Nurse Simeri testified that she has been a registered nurse for twenty-two years and became a sexual assault nurse examiner eight to ten years ago. She described the procedure to collect forensic evidence during the exam and told the jury that she has probably conducted "a couple hundred" sexual assault investigations. (Appellant's App. p. 64). Therefore, based on her experience, Nurse Simeri could compare K.C's behavior with that other sexual assault victims and opine that this behavior was consistent with that of other victims. As a result, an objection to the testimony would not have been sustained and thus, trial counsel was not ineffective for failing to object.

## CONCLUSION

Based on the foregoing, we conclude that (1) the post-conviction court was not required to conduct an evidentiary hearing prior to denying Lotaki's petition; (2) the trial court properly admitted Lotaki's letter; and (3) Lotaki's trial counsel provided effective assistance of counsel.

Affirmed.

BAILEY, J. and CRONE, J. concur