**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 10 2013, 5:31 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOSEPH M. CLEARY**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| WESLEY YOUNG, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1209-PC-753 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Robert R. Altice, Jr., Judge
Cause No. 49G02-0105-PC-108799

**July 10, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Petitioner, Wesley Young (Young), appeals the post-conviction court's denial of his petition for post-conviction relief.

We affirm.

## ISSUES

Young raises five issues on appeal, which we consolidate and restate as the following four issues:

(1) Whether Young received effective assistance of counsel;

(2) Whether Young is entitled to a new trial upon the discovery of new evidence;

(3) Whether the State established Young's conviction beyond a reasonable doubt; and

(4) Whether the State committed prosecutorial misconduct during the trial proceedings.

## FACTS AND PROCEDURAL HISTORY

We adopt the statement of facts as set forth in our memorandum opinion issued in Young's direct appeal, *Young v. State*, 49A02-0205-CR-393 (Ind. Ct. App. Jan. 17, 2003):

> On April 14, 2001, then thirteen-year-old Tiara McGinty was about to leave her home on Carrollton Avenue in Indianapolis when she observed two men[1] dressed in black, hooded shirts standing on the porch holding guns. The front door of the residence was open but the screen door was closed. Tiara was standing inside the house behind the screen door when

---

[1] There were three accomplices perpetrating the crime: two gunmen and a driver. One gunman, other than Young, was recognized by McGinty; all three were identified by Mickens.

2

the men began shooting at the door. Tiara turned to fall on the ground, and the men shot her in the legs and back. One bullet entered one of her thighs and exited out the other thigh. Another bullet entered her back, hit her lung, bruised her heart, broke her rib, hit her liver and lodged in her stomach. She had surgery to remove the bullet in her stomach and was hospitalized for eighteen days.

On May 14, 2001, Indianapolis Police Detective Jeffrey Wager interviewed LeShaun Mickens, McGinty's cousin and an eyewitness to the shooting. Detective Wager took an audiotaped statement from Mickens during which she identified Young as one of the shooters.

The State charged Young, along with two other co-defendants, with attempted murder, aggravated battery, and unlawful possession of a firearm as a serious violent felon. At trial, Mickens repudiated her out-of-court statement and stated that she could not identify the person involved in the shooting. She further testified that Detective Wager told her the identity of the shooters and asked her to lie.

At that point, the State sought to introduce Mickens' out-of-court statement. Young's counsel moved to suppress the statement, alleging it was coerced, was improper impeachment evidence, and, contrary to the State's contention, was not admissible under Indiana Evidence Rule 801(d). The court held a hearing outside the jury's presence, listened to the taped statement and heard testimony from Detective Wager. Following the hearing, the court found that Mickens' statement was not coerced and admitted the tape into evidence. Subsequently, the State played the tape for the jury.

Thereafter, during the State's direct examination of Detective Wager, he testified regarding his May 14, 2001 interview with Mickens and the statement he took from her. Young's counsel objected on the same grounds articulated during the suppression hearing, and the trial court allowed the Detective's testimony. Young was convicted as charged.

Slip op. pp. 2-4. Young was sentenced to a cumulative, executed sentence of sixty years.

Young appealed. During his direct appeal, he contested the admissibility of Mickens' taped statement without providing a limiting instruction to the jury and Detective Wager's testimony regarding the tape recording. We affirmed the trial court's admission of both testimonies. *See id.*

3

On January 14, 2004, Young filed a *pro se* petition for post-conviction relief which was subsequently withdrawn. On November 30, 2012, Young filed another petition for post-conviction relief. On August 27, 2012, after a hearing, the post-conviction court issued its findings of fact and conclusions of law, denying relief.

Young now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

Under the rules of post-conviction relief, the petitioner must establish the grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1, § 5; *Strowmatt v. State*, 779 N.E.2d 971, 974-75 (Ind. Ct. App. 2002). To succeed on appeal from the denial of relief, the post-conviction petitioner must show that the evidence is without conflict and leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id*. at 975. The purpose of post-conviction relief is not to provide a substitute for direct appeal, but to provide a means for raising issues not known or available to the defendant at the time of the original appeal. *Id*. If an issue was available on direct appeal but not litigated, it is waived. *Id*.

### II. *Ineffective Assistance of Counsel*

Young contends that he was denied the effective assistance of both trial and appellate counsel. The standard by which we review claims of ineffective assistance of counsel is well established. In order to prevail on a claim of this nature, a defendant must satisfy a two-pronged test, showing that: (1) his counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms; and (2)

4

there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Johnson v. State*, 832 N.E.2d 985, 996 (Ind. Ct. App. 2005), *trans. denied* (citing *Strickland v. Washington*, 466 U.S. 668, 690, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *reh'g denied*). The two prongs of the *Strickland* test are separate and independent inquiries. *Johnson*, 832 N.E.2d at 996. Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Timberlake*, *v. State*, 753 N.E.2d 591, 603 (Ind. 2001), *reh'g denied, cert. denied*, 537 U.S. 839 (2002) (quoting *Strickland*, 466 U.S. at 697).

Counsel is afforded considerable discretion in choosing strategy and tactics and we will accord those decisions deference. *Timberlake*, 753 N.E.2d at 603. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. The *Strickland* Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. *Id*. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id*. Furthermore, we will not speculate as to what may or may not have been advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best. *Johnson*, 832 N.E.2d at 997.[2]

---

[2] Young asserts that the post-conviction court misstated the standard of review by which to determine ineffective assistance of counsel claims. In particular, he notes that the post-conviction court held Young to the higher burden of showing that he would have been acquitted. We disagree. In its Order, the post-conviction court clearly indicates that Young had to make a "showing of a reasonable probability of affecting the result." (Appellant's App. p. 55).

## A. *Trial Counsel*

Young argues that he received ineffective assistance because his trial counsel failed to conduct an appropriate pretrial investigation. Specifically, he asserts that the recanted testimony by both McGinty and Mickens could have been discovered by his trial counsel if he had pursued a diligent pretrial investigation.

When deciding a claim of ineffective assistance of counsel for failure to investigate, we apply a great deal of deference to counsel's judgments. *Boesch v. State*, 778 N.E.2d 1276, 1283 (Ind. 2002). In *Strickland*, the United States Supreme Court observed:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after a less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitation on investigation. In other words, counsel has a duty to make reasonable investigations or make a reasonable decision that makes particular investigations unnecessary.

*Strickland*, 466 U.S. at 690-91.

The record reflects that Mickens recanted during trial. Although she had told Detective Wager that she had recognized Young as one of the gunmen involved, during trial, Mickens testified that her identification of Young and the two other perpetrators had been coerced by the Detective. However, it was not until more than a decade later, during the post-conviction proceedings that the second witness, McGinty, who had named the other gunman involved but not Young, recanted and claimed to no longer be able to identify anyone.

6

The record here does not support that Young's counsel's performance fell below an objective level of reasonableness. During trial, the thirteen-year-old victim was unshakeable in her identification of Young's co-gunman. At the same time, she also informed the jury that even though there was a second gunman, she could not identify this person. She had told the police officers this while she was in the hospital and she repeated this to the co-gunman's counsel prior to trial. McGinty did not refute any of these statements for more than a decade. Although Young's counsel did not depose or talk with McGinty prior to trial, there is not the slightest indication that Young's counsel would have been able to discredit her testimony.

Furthermore, Young claims that "the lack of pre-trial investigation into McGinty and her family permitted the State to misrepresent the situation to the court and denied Young his ability to present a defense." (Appellant's Br. p. 10). This claim concerns the State's assertion to the jury that McGinty believed that the shooting was in retaliation because her uncle and his friend had hidden Young's guns which had been previously used in a nearby double homicide. In presenting this evidence to the jury, the State relied on McGinty's statement to police officers on the day of the shooting. This statement was never refuted or proven wrong prior to trial and it was merely at the post-conviction hearing that McGinty changed her version of the shooting. There is no indication that even if Young's counsel had interrogated McGinty's family, he would have discovered anything contradicting the State's allegation.

We reach a similar result with respect to Mickens' recantation of her identification of Young. While we agree that "when Mickens repudiated her pre-trial statement,

counsel was caught by surprise," so was everyone else at the trial—including the State who had called Mickens as its witness. Prior to trial, Mickens had indicated that she was across the street at the time of the shooting and had identified Young as one of the gunmen. At trial, however, she testified that she could not identify the men and that Detective Wager had supplied her with the names of the two gunmen. Young now claims that if his trial counsel had conducted a proper pretrial investigation, he would have discovered the coercive nature of Mickens' testimony. The record reflects that although everyone was taken by surprise by Mickens' recantation, Young's counsel took the lead in objecting to her testimony and moving to suppress her out-of-court identification. He also presented the trial court with a written motion for a directed verdict based on Mickens' statement. As with McGinty, there is no evidence suggesting that even if Young's counsel had deposed Mickens prior to trial, she would have recanted her identification at that moment.

In sum, we find that Young's trial counsel's representation was well within the bounds of professional norms and was therefore effective. We affirm the post-conviction's court's conclusion.

## B. *Appellate Counsel*

Next, Young contends that his appellate counsel rendered ineffective assistance. The standard by which we review claims of ineffective assistance of appellate counsel is the same standard applicable to claims of trial counsel ineffectiveness. *Wright v. State*, 881 N.E.2d 1018, 1022 (Ind. Ct. App. 2008), *reh'g denied, trans. denied*. In *Bieghler*, our supreme court identified three categories of appellate counsel ineffectiveness claims,

8

including: (1) denial of access to an appeal; (2) waiver of issues; and (3) failure to present issues well. *Bieghler v. State*, 690 N.E.2d 188, 193-95, *reh'g denied, cert. denied*, 525 U.S. 1021 (1998). In evaluating these claims, we use the following two part test: (1) whether the unraised issues are significant and obvious from the face of the record; and (2) whether the unraised issues are clearly stronger than the raised issues. *Id.* at 194. Otherwise stated, to prevail on a claim of ineffective assistance of appellate counsel, a defendant must show from the information available in the trial record or otherwise known to appellate counsel that appellate counsel failed to present a significant and obvious issue and that this failure cannot be explained by any reasonable strategy. *Ben-Yisrayl v. State*, 738 N.E.2d 253, 260-61 (Ind. 2000), *reh'g denied, cert. denied*, 534 U.S. 1164 (2002).

Specifically, Young first alleges that his appellate counsel was ineffective for failing to contest Final Instruction 17, which stated:

> A conviction may be based solely on the uncorroborated testimony of a single eyewitness, if such testimony established each element of any crime charged beyond a reasonable doubt.

(Trial App. p. 150).

While Young correctly notes that our supreme court disallowed further use of this instruction in *Ludy v. State*, 784 N.E.2d 459, 462 (Ind. 2003), the *Ludy* opinion was issued after we affirmed Young's direct appeal. Prior to *Ludy*, several appellate decisions supported the tender of the instruction. *See id.* at 462 n.2 (listing numerous cases affirming the use of the challenged instruction). As we have held previously, an appellate counsel cannot be held ineffective for failing to anticipate or effectuate a change in the

9

existing law. *Williamson v. State*, 798 N.E.2d 450, 454 (Ind. Ct. App. 2003), *trans. denied* ("For purposes of ineffective assistance of counsel claims, we judge the reasonableness of appellate counsel's strategic decisions based upon precedent that was available at the time the brief was filed"). Moreover, there is no reason to believe that had counsel raised the issue on appeal, the claim would have succeeded given the considerable amount of precedent in favor of the challenged instruction at the time of Young's direct appeal.

In addition, Young asserts that appellate counsel failed to raise a sufficiency of the evidence claim during his direct appeal. The case against Young was primarily based on Mickens' eyewitness identification of him as one of the gunmen. Although Mickens attempted to repudiate that identification at trial, the jury still convicted him. On appeal, Young's appellate counsel unsuccessfully contested the admissibility of Mickens' pretrial statement to Detective Wager. In light of this claim, we cannot conclude that a sufficiency of the evidence claim would have been a stronger argument than the ones raised by counsel. Therefore, we conclude that Young's appellate counsel provided effective assistance of counsel.

## II. *Newly Discovered Evidence*

Next, Young claims that the post-conviction court erred when it denied his request for a new trial based on newly discovered evidence. Specifically, Young contends that McGinty's recantation of her trial testimony during the post-conviction proceedings sheds light on his innocence and her putative testimony would probably result in a different result at a new trial.

10

Evidence will mandate a new trial only when the petitioner demonstrates that: (1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result at retrial. *Carter v. State*, 738 N.E.2d 665, 671 (Ind. 2000).

Evaluating McGinty's refutation under the foregoing prongs, the post-conviction court determined that Young was unable to satisfy prongs two, four, seven, and nine:

> Regarding the second prong, that the evidence is relevant and material, the [c]ourt finds that McGinty's repudiation of her trial testimony is neither relevant nor material. . . . Here it is important to highlight the difference between evidence that is admissible at trial, and evidence that is admissible as newly discovered evidence from the perspective of post-conviction relief. While the facts and circumstances of [McGinty's] repudiation might have been admissible at trial at least as far as it reflects on her credibility, the proffered testimony does not shed any light directly on the guilt or innocence of [Young].
>
> At trial, in his cross-examination of [McGinty], Young's trial counsel underscored the fact that she essentially had nothing to say about his guilt or innocence. She never identified Young as a participant in the crime. For her testimony to be material, this [c]ourt would have to assume that the jury was incapable of separating the facts relating to each defendant and the testimony somehow undermines the State's entire case. There is simply no basis to reach this conclusion, especially in light of the fact that the primary witness against Young, [Mickens], did recant her pre-trial statement and identification of Young, and the jury <u>still</u> convicted him with full knowledge of the recantation.
>
> As to the fourth prong, the only relevance and function of [McGinty's] repudiation of her prior testimony is to undermine her credibility. Moreover, there is substantial evidence that contradicts [McGinty's] contradiction of her trial testimony. She gave essentially the same statements to the police during the investigation, she testified consistently in her discovery statements, and she repeated her testimony at trial under direct examination by the prosecutor and cross-examination by

three defense attorneys. Consequently, the [c]ourt finds the proffered testimony is merely impeachment.

The [c]ourt further finds that [McGinty's] proffered testimony is not worthy of credit, and therefore fails the seventh prong of the test. . . . Her testimony is directly contradicted by her testimony and statements in numerous other instances, and the [c]ourt finds it incredible that even a thirteen year old would so profoundly misunderstand the questions put to her by a police detective. Her explanation is further undermined by the fact that she clearly did understand the questions put to her as she consistently identified only one of the co-defendants as being a shooter, while all the time acknowledging she did indeed know all three of them.

Finally, the [c]ourt finds her putative testimony is unlikely to produce a different result at a new trial, and fails the ninth prong of the test. The fact that this [c]ourt has already found [McGinty's] current testimony lacks credibility virtually mandates the finding that a jury would find it equally so, particularly when one considers the jury's obvious treatment of [Mickens'] recantation. This was a jury presented throughout the trial by witnesses that even the [trial court] said in sidebars were lying with all their prevarications and denials of previous statements.

(Appellant's App. pp. 52-54).

In light of the post-conviction court's detailed analysis of McGinty's recent refutation of the second gunman's identity, we agree with its conclusion that Young failed to carry his burden of proof and no new trial is mandated. Mc Ginty's recantation only pertained to Young's co-perpetrator; it did not materially affect the evidence linking Young to the crime. Therefore, it is unlikely that McGinty's changed testimony would produce a different result at trial. If the jury at Young's trial was not swayed by Mickens' change of story which directly compromised Young, neither would it be likely that a subsequent jury would be swayed by McGinty's altered testimony regarding a shooter other than Young. We affirm the post-conviction court's denial of Young's request for a new trial.

III. *Sufficiency of the Evidence*

Next, Young asserts that the State failed to present sufficient evidence to sustain his conviction. Because of Mickens' recantation, Young now maintains that there is no evidence linking him to this crime. It is well settled that, in post-conviction proceedings, claims that are known and available at the time of the direct appeal, but are not argued, are waived. *Timberlake v. State*, 753 N.E.2d 591, 597 (Ind. 2001), *reh'g denied*. They cannot be subsequently raised in the post-conviction setting. A sufficiency of the evidence issue is the epitome of a claim brought on direct appeal. Because Young failed to raise this argument in his direct appeal, he cannot now do so in his post-conviction proceeding.

## IV. *Prosecutorial Misconduct*

Lastly, Young contends that his trial was tainted by prosecutorial misconduct. Nevertheless, like his sufficiency of the evidence claim, this contention was available to be made during a direct appeal. *See id*. As Young failed to pursue the issue on direct appeal, it is now no longer available for our review in the post-conviction proceedings.

## CONCLUSION

Based on the foregoing, we conclude that (1) Young received effective assistance of counsel; (2) Young is not entitled to a new trial; and (3) Young's sufficiency and prosecutorial misconduct claims are issues unavailable for our review.

Affirmed.

BRADFORD, J. and BROWN, J. concur