Rebecca L. REYNOLDS, Appellant–
Defendant,

v.

STATE of Indiana, Appellee.

No. 20A05–0206–PC–297.

Court of Appeals of Indiana.

Feb. 14, 2003.

Ross G. Thomas, Dillon Law Office, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Rebecca Reynolds appeals from the post-conviction court's denial of her petition for relief. She presents for our review the issue of whether she received ineffective assistance of trial counsel.

We affirm.

Reynolds was charged by indictment with Neglect of a Dependent Resulting in Serious Bodily Injury, as a Class B felony.[1] The facts leading to the indictment indicate that on June 23, 1999, Reynolds and her boyfriend, Shannon Troyer, were at her home with her nine-week-old son who was born seven weeks premature. Reynolds, who had been smoking crack cocaine in the house, later discovered that her son was dead.[2] Medical reports revealed that the child had a toxic level of cocaine in his system.

The State sought indictments of both Reynolds and Troyer. Only Reynolds was indicted by the Grand Jury. Reynolds' trial

---

1. Ind.Code § 35–46–1–4 (Burns Code Ed. Supp.2002).

2. From the testimony of trial counsel at the post-conviction hearing, it appears that there

may have been several individuals partying at Reynolds' home either immediately before or during the time that her son died.

counsel, Mark Doty, reviewed the State's file in its entirety after Reynolds was charged. Included in the file were articles on the toxic effects of cocaine in children and medical reports assessing the cause of death in this case. The file also contained various theories of how the cocaine may have gotten into the child's system, including theories on passive smoke inhalation and direct consumption of cocaine. Based upon those reports, Mr. Doty determined that the State would not be able to conclusively prove how the toxic levels of cocaine got into the child's system. Nonetheless, because of Reynolds' actions at the residence, he believed that the State would prevail at trial in proving that Reynolds was guilty of the crime charged. Mr. Doty also anticipated that the trial would be emotionally charged because of the nature of the facts.

Mr. Doty advised his client to plead guilty in exchange for a guarantee that she would not receive a sentence of longer than ten years, the presumptive sentence for a Class B felony.[3] Reynolds decided to accept the State's offer of the guilty plea and at the hearing, admitted to the facts establishing the death of her child. She also agreed that she understood the charges against her and that she entered the plea as her own free and voluntary act, that she was satisfied with the representation of her counsel, that she felt that Mr. Doty had done everything which should have been done, and that he was given all of the facts she knew and that they had discussed them. The trial court accepted the guilty plea and sentenced Reynolds to ten years incarceration.

At the post-conviction hearing, Reynolds focused upon Mr. Doty's conclusion that the State would not likely be able to prove the means by which the cocaine entered into Reynolds' son's body. She asserts that she received ineffective assistance of trial counsel because Mr. Doty should have examined in more detail the State's theory of passive smoke inhalation and whether it was a viable cause of the child's death. She further asserts that had counsel investigated these matters further and properly advised her that she would probably not have pleaded guilty.

Because Reynolds asserts ineffective assistance of trial counsel following a guilty plea, we review her contention under the standard established in *Segura v. State*, 749 N.E.2d 496 (Ind.2001). A post-conviction claim of ineffective assistance of counsel requires the petitioner to show that (1) counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability that but for counsel's errors, the result of the proceeding would have been different. *Id.* at 500–01; *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Segura categorized two types of ineffective assistance of counsel claims following a guilty plea, one of which involves errors that impair or overlook a defense. *Segura*, 749 N.E.2d at 502–03; *Smith v. State*, 770 N.E.2d 290, 295 (Ind.2002). It is this category which applies because Reynolds' claim goes directly to whether she had a valid defense to challenge the State's case against her. To prevail upon her claim, Reynolds must show that a defense was overlooked or impaired and that there is a reasonable probability of success at trial. *Segura*, 749 N.E.2d at 503.

At a post-conviction hearing, the petitioner has the burden of establishing the grounds for relief. Ind. Post–Conviction

---

**3.** The presumptive sentence for a Class B felony is established by Ind.Code § 35–50–2–5

(Burns Code Ed. Repl.1998).

Rule 1(5). Because Reynolds did not prevail before the post-conviction court, she is appealing from a negative judgment. *See Smith,* 770 N.E.2d at 295. When appealing from a negative judgment, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *Id.*

We begin by addressing two points of error in Reynolds' claim. First, she contends that she must show that, but for counsel's errors, she "would not have pleaded guilty and would have insisted on going to trial." Appellant's Brief at 9. As discussed above, this contention is incorrect because Reynolds must show a reasonable probability of success at trial. Reynolds' argument also seems to be based upon the mistaken view that the State had to prove that she did an act which directly caused the death of her son, rather than just placing him in the situation which caused his death. Such is demonstrated in the questioning of her at the post-conviction hearing. Her post-conviction counsel asked her whether she had any way of knowing or whether she was provided with information that her actions of using cocaine while caring for her baby caused his death. She answered that she had no evidence that her consumption of cocaine caused his death. She also testified that she does not believe that she did anything to cause the death of her son. Reynolds also points to the post-conviction testimony of her trial counsel in which he stated, "If it could have been established that in fact someone had given the child cocaine, it very well would have had a direct bearing on her defense." Post-Conviction Transcript at 12.

Here, the State was not required to show that Reynolds "caused" her son's death, but rather, that her actions knowingly or intentionally placed him in a situation which endangered his life, and indeed, that this act *resulted* in serious bodily injury. *See* I.C. § 35–46–1–4.[4] The evidence upon which the State relied in charging Reynolds indicated that her son had died from a toxic level of cocaine in his system. It is irrelevant whether the cocaine got into the baby's system through the inhalation of smoke or through the direct ingestion of cocaine. What is relevant is that the baby died from cocaine in his system and that Reynolds knowingly or intentionally placed her baby in the position where he may have come into contact with cocaine in such a manner that it could have gotten into his system. The State did not have to prove the specific means by which it was consumed, and indeed, such showing may have been impossible. Nonetheless, Reynolds' son did die from a toxic level of cocaine in his system, and the evidence established that Reynolds was using cocaine at the time that her son died and that she may have had other people similarly engaged at her home.

Reynolds admits the fact that she caused her son to be at her residence where she was using cocaine. However, she also stated that she did not knowingly or intentionally place her child in danger. Nevertheless, this testimony cannot be squared with her testimony at her guilty plea hearing. Upon establishing the facts

4. The relevant portion of the statute reads:
"(a) A person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally:
(1) places the dependent in a situation that endangers the dependent's life or health; ... commits neglect of a dependent, a Class D felony.
(b) However, the offense is:
* * *
(2) a Class B felony if it is committed under subsection (a)(1), (a)(2), or (a)(3) and results in serious bodily injury...."

for her guilty plea, Reynolds testified that she placed her son in a situation which endangered his life and health in that she was smoking cocaine in his presence and that her son would have been able to breathe the smoke, which resulted in his death. She also testified that she had been told that her child should not be exposed to smoke in any form.

Additionally, while Reynolds now claims that someone may have given the cocaine to the child, and while Mr. Doty stated that such fact would have had a direct bearing on her defense, Mr. Doty also stated that he had statements from the individuals who were present at Reynolds' home and did not have any reason to believe that anyone was going to come forward and admit that they voluntarily gave the child cocaine. Mr. Doty also stated that, at the time that Reynolds pleaded guilty, he believed that she felt in her heart that she was responsible for the death of her son regardless of the fact that there were questions about how the baby had ingested the cocaine. Further, Reynolds is misconstruing Mr. Doty's statement that evidence which showed someone else had given the child cocaine would have affected her defense. When viewed in context of Mr. Doty's entire testimony, it is clear that he recognized that the State did not have to show that Reynolds gave her baby cocaine but that she only placed him in the position where he may have come into contact with the cocaine and that the contact endangered his life or health. It is also apparent from his testimony that he did not believe that the evidence would establish that anyone had given the child drugs, and in any event, Reynolds' lifestyle is what placed the child in danger because she was using cocaine and allowed other people to use it in the baby's presence.

Here, Reynolds has not shown that the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the trial court. In fact, Reynolds has been unable to show that a defense was overlooked or impaired, and in the event that one was, that there was a reasonable probability that she would have succeeded at trial.

The decision of the post-conviction court is affirmed.

SHARPNACK and KIRSCH, JJ., concur.

**In the Matter of E.L., Appellant–Respondent,**