# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 18 2016, 7:48 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Lynn K. C. Sines
New Castle, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lynn K. C. Sines, *Appellant-Petitioner,* | October 18, 2016 |
| | Court of Appeals Cause No. 91A02-1601-PC-113 |
| v. | Appeal from the White Superior Court |
| State of Indiana, *Appellee-Respondent.* | The Honorable Robert Mrzlack, Judge |
| | Cause No. 91D01-1409-PC-3 |

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Petitioner, Lynn Sines (Sines), *pro se*, appeals from the denial of his petition for post-conviction relief.

We affirm.

## ISSUES

Sines raises two issues on appeal, which we restate as the following:

(1) Whether Sines received ineffective assistance of counsel; and

(2) Whether Sines' guilty plea was voluntary.

## FACTS AND PROCEDURAL HISTORY

On New Year's Eve of 2012, Robert Mitchell (Mitchell) had a party at his house. A.M., Mitchell's fifteen-year-old sister, Sines, Sines' girlfriend, and several others were present. Everyone was drinking alcohol and smoking marijuana. A.M. fell asleep in the living room, and around 1:00 a.m., Mitchell carried her into his bedroom and covered her with a blanket. Mitchell and his girlfriend slept on the couch, while Sines and his girlfriend slept on the recliner. At around 5:00 a.m., Mitchell woke up to get a drink in the kitchen and observed that Sines' girlfriend was alone on the recliner. While in the kitchen, Mitchell saw Sines walk out of his bedroom and go into the bathroom. Mitchell went into his bedroom and briefly spoke to A.M., who stated "My pants are down, he was on top of me, and my vagina hurts." (Appellant's Exh. 3). Mitchell confronted Sines and accused him of rape. A fight ensued.

[4]     On January 1, 2012, the police arrested Sines. After being *Mirandized*, Sines confessed that he had sexual intercourse with A.M. On the same day, the State filed an Information, charging Sines with sexual misconduct with a minor, a Class B felony, Ind. Code § 35-42-4-9(a)(1). Thereafter, the parties entered into a plea agreement, in which Sines agreed to plead guilty and the State agreed to cap his sentence at ten years. On March 29, 2012, the following exchange occurred:

> TRIAL COURT: [] Sines, is this your understanding of the plea agreement?
>
> [SINES]: Yes.
>
> TRIAL COURT: Other than the plea agreement as stated, has anyone made any promises to you to convince you to plead guilty?
>
> [SINES]: No.
>
> TRIAL COURT: Has anyone forced you to plead guilty?
>
> [SINES]: They tried to, but no.
>
> TRIAL COURT: Okay. Who tried to force you?
>
> [SINES]: That don't matter.

(Appellant's Exh. 5, p. 4). After swearing him in, the trial court informed Sines of his rights and the penal consequence of pleading guilty. The factual basis of the crime was established as follows: Sines admitted that on January 1, 2012, he

was at least twenty-one years old and he had sexual intercourse with A.M., who was fifteen-years old. Sines indicated that he read and discussed the plea agreement with his counsel and he intended to plead guilty. The trial court took Sines' guilty plea under advisement and set a sentencing hearing for April 25, 2012. At the sentencing hearing, Sines was given the opportunity to make changes to the pre-sentencing report (PSI) and present additional evidence. Despite a significant alteration on the version of events in the PSI—where Sines claimed A.M. woke him up from the living room; invited him to the bedroom for sexual intercourse; and Mitchell confronted him and pointed a gun at him— Sines did not present additional evidence. Before accepting Sines' guilty plea, the trial court asked Sines whether he wished to make a final statement through counsel, and Sines answered, that he did not. Subsequently, the trial court accepted Sines' guilty plea and sentenced him to ten years in the Department of Correction. Sines' sentence was to be served consecutively to other causes. Between 2012 to 2016, Sines filed eleven motions to modify his sentence. On February 22, 2016, Sines filed another motion arguing that the trial court should modify his sentence by suspending the remainder of his sentence to home detention and probation. On February 26, 2016, the trial court denied Sines' motion. Sines appealed. In our memorandum decision, we affirmed the trial court. *See Sines v. State*, No. 91A05–1603–CR–544, (Ind. Ct. App. Aug. 3, 2016).

[5] On September 8, 2014, Sines filed a petition for post-conviction relief. The State filed its response on October 9, 2014. On October 10, 2015, Sines, *pro-se*,

amended his petition, alleging, in part, that his trial counsel failed to investigate the threats which induced his plea. In a supporting affidavit, Sines claimed that on January 1, 2012, the day of the offense, he had been threatened at gunpoint by Mitchell to "admit to the crime or [his] life would be in danger." (Appellant's App. p. 46). Sines further stated that he "did not want to plea[d] guilty" and that he "attempted to tell [the] Judge [] about the threats." (Appellant's App. pp. 46-47). Additionally, Sines claimed that his trial counsel failed to present exculpatory DNA evidence, an alibi witness, and challenge the sufficiency of the medical evidence.

[6]     An evidentiary hearing on Sines' post-conviction petition was held on September 29, 2015. Sines first presented testimony from a doctor who had reviewed A.M.'s medical records in relation to the incident. The doctor indicated that the bruise on A.M.'s hymen was the "result of blunt force penetrating the hymen." (PCR Tr. p. 11). The doctor indicated that the bruise on A.M.'s hymen could have been caused by "a whole variety of things." (PCR Tr. p. 11). Next, Sines called his trial counsel. Sines first asked his counsel why he did not contact any expert witnesses to review A.M.'s medical report, and counsel responded by stating that "[t]here was no dispute as far as what had taken place that would require a medical expert to testify." (PCR Tr. p. 15). On further inquiry about what he meant, Sines' trial counsel stated that Sines had confessed, twice, to the police that he had sexual intercourse with A.M., and therefore delving into DNA evidence would be a waste of time. Sines then asked counsel why he did not establish a viable defense, and counsel

remembered that Sines knew that A.M. was at least fifteen-years old. With regards to a possible alibi, trial counsel recalled that Sines' girlfriend claimed that Sines was with her, but counsel did not believe this claim could support a viable alibi since Sines had confessed to the crime and other evidence placed Sines in the bedroom with A.M. At the close of the evidence, the post-conviction court took the matter under advisement. On December 7, 2015, Sines filed his findings of fact and conclusions of law. On December 30, 2015, the post-conviction court issued an order denying Sines' post-conviction relief and stated, in part:

1. That on March 29, 2012, [Sines] entered a plea of guilty to [s]exual [m]isconduct with a [m]inor, a Class B [f]elony, pursuant to a written [plea] agreement. At the plea hearing [Sines] was asked if he signed the plea agreement, and he answered yes; [Sines] was asked if he understood the [plea] agreement, and he answered yes; [Sines] was asked if anyone made any promises to him other than the plea agreement to convince him to plead guilty, and he answered no; [Sines] was asked if anyone forced him to plead guilty, and he answered "they tried to, but no." The [trial court] then asked [Sines] who tried to force him and he answered "That don't matter." [Sines], at the [e]videntiary [h]earing, argued that threats made to him by others on the date the offense was committed, were threats made to convince him to plead guilty and his guilty plea was therefore not freely, voluntarily, or intelligently made.

2. At the plea hearing [Sines] was advised of the charges pending against him, his rights to counsel at all stages of a criminal case, and he was advised of his constitutional rights that he had and that he would be giving up if he entered a plea of guilty. At the plea hearing [Sines] was advised of the statute defining the offense and the possible penalties he faced if he had been convicted. [Sines] stated that he understood the charge pending against him, the

statute defining the offense, the possible penalties he faced, his rights to an attorney and his rights that he would be giving up if he entered a plea of guilty. At the plea hearing [Sines] also acknowledged that he understood that by pleading guilty he would be admitting as true the facts set out in the charging information. At the plea hearing [Sines] acknowledged that his [plea] of guilty was his own free and voluntary act and that by pleading guilty he was telling the [trial court] that he committed the offense.

3. Following [Sines'] plea of guilty on March 29, 2012, the [trial court] took [Sines'] plea of guilty and the plea agreement under advisement and set a [s]entencing [h]earing for April 25, 2012.

4. On April 25, 2012, [Sines] appeared in person and by counsel for a [s]entencing [h]earing. He was given the opportunity to make any changes to the pre-sentence investigation report and to present any evidence. No evidence was presented by [Sines]. [Sines], through counsel[,] was asked if he wished to make a final statement on behalf of [Sines], and counsel asked the [trial court] to accept the plea agreement. Before accepting [Sines'] guilty plea and plea agreement the [trial court] asked the [Sines] if there was anything he would like to say on his own behalf, and he answered no. The [trial court] then accepted [Sines'] guilty plea and sentenced [Sines] pursuant to the plea agreement.

5. To establish a violation of the Sixth Amendment right to effective assistance of counsel, a petitioner must establish that (1) counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

6. The record of the plea hearing and the sentencing hearing fails to support [Sines'] allegation that his guilty [plea] was not freely, voluntarily and intelligently made, and that record speaks for itself.

7. [Sines] has failed through the evidence and arguments to establish that his counsel's performance fell below the objective standard of reasonableness based upon prevailing professional norms.

(Appellant's App. pp. 87-88).

[7] Sines now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Standard of Review*

[8] Before discussing Sines' allegations of error, we note that Sines is proceeding *pro se*, such litigants are held to the same standard as trained counsel and are required to follow procedural rules. *Evans v. State*, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004), *trans. denied*.

[9] In a post-conviction proceeding, the petitioner must establish the grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Overstreet v. State*, 877 N.E.2d 144, 151 (Ind. 2007). When challenging the denial of post-conviction relief, the petitioner appeals from a negative judgment. *Overstreet*, 877 N.E.2d at 151. To prevail, the petitioner must show that the evidence leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *Id*. We will disturb the post-conviction court's decision only where the evidence is without conflict and leads to but one conclusion and the post-conviction court reached the opposite conclusion. *Henley v. State*, 881 N.E.2d 639, 643-44 (Ind. 2008).

[10] Where the post-conviction court enters findings of fact and conclusions of law, as in the instant case, we do not defer to the post-conviction court's legal conclusions; the post-conviction court's findings and judgment will be reversed, however, only upon a showing of clear error that leaves us with a definite and firm conviction that a mistake has been made. *Overstreet*, 877 N.E.2d at 151.

## II. *Ineffective Assistance of Trial Counsel*

[11] The standard by which we review claims of ineffective assistance of counsel is well established. In order to prevail on a claim of this nature, a defendant must satisfy a two-pronged test, showing that: (1) his counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Johnson v. State*, 832 N.E.2d 985, 996 (Ind. Ct. App. 2005) (citing *Strickland*, 466 U.S. at 690, 694) *reh'g denied, trans. denied*. The two prongs of the *Strickland* test are separate and independent inquiries. *Johnson*, 832 N.E.2d at 996. Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001) (quoting *Strickland*, 466 U.S. at 697), *reh'g denied, cert. denied*, 537 U.S. 839 (2002).

[12] Counsel is afforded considerable discretion in choosing strategy and tactics and we will accord those decisions deference. *Id.* A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* The *Strickland* Court

recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. *Id*. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. *Id*. Furthermore, we will not speculate as to what may or may not have been advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best. *Johnson*, 832 N.E.2d at 997.

## A. *Guilty Plea*

[13] In his amended PCR petition, Sines alleged that his trial counsel was ineffective because he failed to investigate the threats that prompted his plea. According to Sines, he only pled guilty because he received death threats from Mitchell on the day he committed the offense.[1]

[14] Where a petitioner pleads guilty and asserts ineffective assistance of counsel, the type of prejudice that must be demonstrated depends upon the type of

---

[1] Sines also argues that his plea was not voluntary. Specifically, Sines argues that he "did not want to plea[d] guilty" and he "attempted to tell the trial court about the threats." (Appellant's App. pp. 46-47). Voluntariness in Indiana practice "focuses on whether the defendant knowingly and freely entered the plea, in contrast to ineffective assistance, which turns on the performance of counsel and resulting prejudice." *Cornelious v. State*, 846 N.E.2d 354, 358 (Ind. Ct. App. 2006), *trans. denied*. Because Sines' voluntariness argument is distinct from ineffective assistance of counsel, we choose to address this claim separately.

claim. There are two categories of claims: "(1) an unutilized defense or failure to mitigate a penalty or (2) an improper advisement of penal consequences." *Willoughby v. State*, 792 N.E.2d 560, 563 (Ind. Ct. App. 2003) (citing *Segura v. State*, 749 N.E.2d 496, 507 (Ind. 2001)). Claims that counsel overlooked or impaired a defense require that the petitioner establish that a defense was overlooked or impaired and that there was a reasonable probability of success at trial. *Segura*, 749 N.E.2d at 503; *Reynolds v. State*, 783 N.E.2d 357, 358 (Ind. Ct. App. 2003).

[15] At Sines' initial interview, Sines informed the police that he woke up in Mitchell's bed and A.M. was lying next to him. Sines stated that he was still drunk from the night's party and admitted that he had sexual intercourse with A.M. Sines claimed that it is only when he climaxed that he realized that A.M. was not his girlfriend. Sines stated that he left the bedroom and went to use the bathroom. At that point, Mitchell went into the bedroom, spoke to A.M., and when he exited his bedroom, Mitchell confronted him and a fight ensued. As noted, in the PSI, Sines altered his version of events of January 1st. Sines' second story was that he was afraid about how his girlfriend would feel about him being unfaithful. Sines claimed that A.M. woke him up in the living room and invited him to the bedroom, and further requested him to have sex with her. Sines stated that when Mitchell confronted him, he pointed a gun at him.

[16] At the post-conviction hearing, Sines' trial counsel partially recalled Sines' statement that Mitchell pointed a gun at him, but counsel did not perceive this as a threat to induce a guilty plea. Even if we were to find that counsel

rendered deficient performance by recommending that Sines accept the plea agreement, Sines was not prejudiced. The evidence against Sines on the instant offense was overwhelming and Sines made no showing that there was a reasonable possibility that he would not have been convicted had he gone to trial. As noted, in Sines' initial interview, he admitted to the crime. Further, although A.M. could not recall the sex act, she remembered Sines being in the bedroom with her, being on top of her, kissing her, and Mitchell confronting Sines. Sines' second confession was in a letter addressed to the investigating officer, where he pointed out that statements in his initial interview were a "lie" and that it was A.M. who asked him to have sex with her, and he "agreed as [he] was still intoxicated by the drugs and alcohol." (PCR Tr. p. 28). The letter also described him leaving A.M. in the bedroom and being confronted by Mitchell.

[17] Here, we cannot conclude that the outcome of Sines' trial would have been any different had he rejected the plea agreement and proceeded to trial, and therefore, Sines was not prejudiced by trial counsel's performance. *See Segura*, 749 N.E.2d at 507. Moreover, Sines' self-serving statement that he would not have otherwise pled guilty is insufficient to show that the post-conviction court erred when it ruled on this issue. Sines has not demonstrated that he was denied the effective assistance of trial counsel.

## B. *Failure to Investigate*

[18] Sines additionally argues that his trial counsel was ineffective by failing to present exculpatory DNA evidence, presenting an alibi witness, and challenging

the sufficiency of A.M.'s medical report. We have held before that "establishing failure to investigate as a ground for ineffective assistance of counsel requires going beyond the trial record to show what investigation, if undertaken, would have produced." *McKnight v. State*, 1 N.E.3d 193, 201 (Ind. Ct. App. 2013) (citing *Woods v. State*, 701 N.E.2d 1208, 1214 (Ind. 1998), *cert. denied* (1999)). "This is necessary because success on the prejudice prong of an ineffectiveness claim requires a showing of a reasonable probability of affecting the result." *Id.* (quoting *Woods*, 701 N.E.2d at 1214).

[19] At Sines' post-conviction hearing, Sines' trial counsel stated that there was no identity issue and delving into the DNA evidence would be "a waste of time." (PCR Tr. p. 31). Specifically, trial counsel stated that Sines had made several confessions to the police admitting to the offense. With regard to a possible defense alibi, trial counsel recalled that Sines' girlfriend had claimed that Sines was by her side and he never left the recliner in the living room; however, counsel did not believe this assertion could support a viable alibi because Sines was seen exiting the victim's bedroom. Finally, with respect to the medical evidence, at the evidentiary hearing, Sines presented evidence from a doctor who had reviewed A.M.'s medical records. The doctor testified A.M.'s bruised hymen was a result of a "blunt force" and that it could have been caused by anything. (PCR Tr. p. 11). Despite his claim, we note that A.M.'s bruised hymen is consistent with sexual intercourse. Sines admitted, *twice*, that he had sexual intercourse with A.M. Thus, Sines' suggestion that the medical report did not prove that he had sexual intercourse with A.M. is without merit.

### III. *Voluntariness of Plea*

[20] Lastly, Sines also seems to argue that his guilty plea was not knowingly, voluntarily, and intelligently made. A trial court may not accept a plea of guilty unless it has determined that the plea is voluntary. *Richardson v. State*, 800 N.E.2d 639, 643 (Ind. Ct. App. 2003) (citing I.C. § 35-35-1-3). Before accepting a guilty plea, the trial court must take steps to insure that the defendant's plea is voluntary. *Id*. (citing I.C. §§ 35-35-1-2; -3). "Generally speaking, if a trial court undertakes these steps, a post-conviction petitioner will have a difficult time overturning his guilty plea on collateral attack." *Id*. (citing *State v. Moore*, 678 N.E.2d 1258, 1265 (Ind. 1997), *cert. denied*).

[21] In the instant case, the colloquy between the trial court and Sines demonstrates that Sines' plea was voluntary. At the plea hearing, Sines was asked if he signed the plea agreement, and he answered yes; Sines was asked if he understood the plea agreement, and he answered yes; Sines was asked if anyone made any promises to him other than the plea agreement to convince him to plead guilty, and he answered no; Sines was asked if anyone forced him to plead guilty, and he answered, "they tried to, but no." (Appellant's Exh. 5, p. 4). The trial court then asked Sines who tried to force him and he answered, "That don't matter." (Appellant's Exh. 5, p. 4). Sines, at the evidentiary hearing, argued he was in fear for his life after Mitchell pointed a gun at him, and his guilty plea was therefore not voluntarily or intelligently made. Despite Sines' assertion that Mitchell's threats impelled him to plead guilty, at the post-conviction hearing, Sines' counsel testified that he did not believe the threats

compelled Sines to plead guilty, that he went over the plea agreement with Sines prior, and the trial court did the same before Sines pled guilty. Based on the foregoing, we conclude that the post-conviction court did not err when it found that Sines' guilty plea was voluntary.

## CONCLUSION

[22] Based on the foregoing, we conclude that Sines did not receive ineffective assistance of trial counsel, and his guilty plea was voluntary.

[23] Affirmed.

[24] Bailey, J. and Barnes, J. concur